# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 17-693


**STATE OF LOUISIANA**

**VERSUS**

**TRAVIS R. GOODIE**


\*\*\*\*\*\*\*\*\*\*

SUPERVISORY WRIT FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, NO. MD161519
HONORABLE DAVID SMITH, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

## JOHN D. SAUNDERS
## JUDGE

\*\*\*\*\*\*\*\*\*\*

Court composed of John D. Saunders, Shannon J. Gremillion, and John E. Conery, Judges.


**WRIT DENIED.**

**Keith Stutes**
**District Attorney**
**Fifteenth Judicial District**
**Emilia Salas Pardo**
**Assistant District Attorney**
**P. O. Box 3306**
**Lafayette, LA 70502-3306**
**(337) 232-5170**
**COUNSEL FOR PLAINTIFF/RESPONDENT:**
     **State of Louisiana**

**Amanda Koons**
**Fifteenth Judicial District Defender**
**PO Box 3622**
**Lafayette, LA 70502**
**(337) 232-9345**
**COUNSEL FOR DEFENDANT/APPLICANT:**
     **Travis R. Goodie**

**SAUNDERS, Judge.**

The defense alleges that, on July 14, 2017, the State charged Defendant, Travis Goodie, with one count of violating a protective order in violation of La.R.S. 14:79(B)(1).

Prior to Defendant being charged, the trial court, on June 15, 2017, held a "Gwen's Law" hearing pursuant to La.Code Crim.P. art. 313. Following presentation of the evidence and argument by counsel, the district court denied bail based upon a finding that there was clear and convincing evidence that Defendant posed a present danger to others.

On June 23, 2017, the defense filed a notice of its intent to seek supervisory review of the denial of bail in the instant case. As a result, on June 28, 2017, the trial court set July 28, 2017, as the return date.

On July 31, 2017 (postmarked July 28, 2017), Defendant filed a writ application with this court seeking supervisory review of the trial court's June 15, 2017, ruling denying Defendant bond. On August 1, 2017, the State filed an opposition brief with this court restating the facts and arguments made at the hearing.

At the June 15, 2017, hearing, the State introduced the protective order into evidence. The protective order, which is acknowledged by Defendant's signature, applies from April 27, 2017, through October 27, 2018. It protects the Petitioner, Cami R. Chaddick, from Defendant under the provisions regarding domestic abuse, La.R.S. 14:2131 et seq. (The order stated the trial court found Defendant to be a credible threat to the physical safety of Ms. Chaddick and, therefore, prohibited Defendant from possessing a firearm for the duration of the order.)

The following prohibitions were marked as not expiring following the October 27, 2018, expiration date of the order. Defendant was ordered to not

abuse, harass, assault, stalk, follow, track, monitor, threaten, contact (even through a third party or social media) Ms. Chaddick unless it related to their two children, go within 100 yards of Ms. Chaddick unless it related to their two children, go within 100 yards of Ms. Chaddick's residence (there was no exception to this prohibition), damage the belongings, damage the property, shut off utilities, stop mail service, or otherwise interfere with the living conditions of the protected person. Defendant was further ordered to stay away from Ms. Chaddick's workplace.

Though the order granted temporary custody of the children to Ms. Chaddick, Defendant was allowed unsupervised visitation as reasonably permitted by Defendant's offshore work schedule. The protective order also awarded child support.

The prosecution then stated the basis for Defendant's arrest in the instant case. On June 10, 2017 Ms. Chaddick reported seeing Defendant in the area of her house. The person matching Defendant's description was seen walking away from Ms. Chaddick's home. The police responded, and when they subsequently stopped Defendant in a traffic stop, they *Mirandized* Defendant.

Thereafter, Defendant admitted to being at the home. Defendant explained he had gone there to check on his children. Defendant denied knocking on the door. Defendant said he had walked through the area to reach his cousin's house. Defendant's car alarm had activated, and he took a box cutter from his cousin's house to cut the wires to the alarm. Defendant did not identify his cousin or say he actually spoke with the cousin.

Defendant admitted that he stopped to look inside Ms. Chaddick's home during this time. Defendant was within 100 yards of the residence. Though

2

Defendant said he had gotten a box cutter from his cousin's house, a pat-down of Defendant's person yielded no box cutter.

The State continued that, two days prior, Defendant was issued a misdemeanor summons for admitting to hacking Ms. Chaddick's email account, retrieving nude photographs of her, and posting them on a social media website without her consent. The misdemeanor case report number was 174647; the State introduced the report as its second exhibit.

The police report for the June 8, 2017, offense shows the reported violation to be listed as a violation of a protective order, in violation of La.R.S. 14:79. The evidence collected consisted of audio visual recordings and screen shots of text messages. The report showed Defendant was issued a misdemeanor summons as a result of the complaint.

The narrative portion of the police report explained the basis of the complaint. When Ms. Chaddick and Defendant interacted with each other in reference to their children, they had a heated argument. After they parted ways, Defendant began texting Ms. Chaddick with threats that he would go to her residence. Additionally, Defendant had accessed Ms. Chaddick's email and had copied a series of private photographs of Ms. Chaddick with her new lover. Both Ms. Chaddick and her partner were nude and clearly identifiable. These photographs were posted in a social media collage. Not only did the attached information identify Ms. Chaddick and her lover but it also included the following caption:

> This is the slut of a baby momma I have this is the second dude I found out she's f#$&%*! and he's married . . . the one she didn't even know his name . . . I have proof of the other one to[o] . . . just sad I had kid's [sic] with someone like this.

3

Additional text messages and photos revealed Defendant had threatened suicide. Though Ms. Chaddick provided a written statement, she declined to file charges for nonconsensual disclosure of a private image under La.R.S. 14:283.2.

The narrative portion of the police report also contained a description of the officers' interaction with Defendant following Ms. Chaddick's June 8, 2017, complaint. After being *Mirandized*, Defendant "admitted contacting the victim outside of the protective order parameters. Additionally[,] the suspect admitted going into the victim's email without permission and taking the photographs for the collage." As a result, the deputies arrested Defendant for a first offense violation of a protective order and released him on a misdemeanor summons.

The prosecution next noted that Defendant has been charged with one count on invading Ms. Chaddick's home in docket number 161690. Defendant was out on bond for the home invasion and subject to a misdemeanor summons for violating a protective order (for the harassment) when Defendant was arrested within 100 yards of Ms. Chaddick's residence.

The State then argued this pattern of activity showed a pattern of escalation; both the crimes against Ms. Chaddick and her concern for her safety were escalating. Defendant and Ms. Chaddick were married for ten to eleven years and share three children. Though Ms. Chaddick did not want to testify at the hearing, she was concerned about the increase of activity and about her safety.

The prosecution then introduced Defendant's jail packet as its third exhibit to prove Defendant's current charges for home invasion and two prior theft arrests. The State pointed out that there were failures to appear relating to the theft charges. Additionally, there was a bench warrant for revocation.

The jail packet provided additional information about the June 10, 2017, incident. When the deputies arrived in the area, they saw Defendant walking away

4

from the area and get into a car. When stopped, the deputies advised Defendant of his *Miranda* rights. Defendant then said he had gone to Ms. Chaddick's residence to check on his children. Defendant was aware of the restraining order, but he thought it said 100 feet instead of 100 yards. Defendant maintained he did not go onto the property or knock on the door, but he admitted being within 100 yards of the home. The report went on to note that Defendant was the subject of a restraining order because he had been arrested on April 16, 2017, for home invasion of Ms. Chaddick's residence. Moreover, Defendant had been arrested for first offense violation of a protective order on June 8, 2017.

The prison packet additionally showed that in 2012, bench warrants were issued for Defendant's failure to appear for arraignment on charges of operating a vehicle under a suspended or revoked license, for having an expired inspection sticker, and for theft between $500.00 and $1,500.00. Defendant had an additional bench warrant for the failure to appear for trial of the theft charge. In 2014, Defendant had a bench warrant issued for his failure to appear for a revocation hearing relating to a conviction for theft less than $500.00. The bench warrants were followed by information showing Defendant was arrested on April 16, 2017, for home invasion, in violation of La.R.S. 14:62.8.

The prosecution then asked the district court to consider holding Defendant without bond because of the increase in severity and because of his prior failure to appear. In the alternative, the State asked the trial court to consider requiring Defendant to wear an ankle monitor while out on bond.

The defense responded that Defendant was motivated by concern for his children. He was worried about the type of men to whom Ms. Chaddick was exposing his children. The defense did not accept responsibility for posting the

5

nude photographs of Ms. Chaddick. Both the trial court and the prosecution pointed out that the report said he posted the pictures.

The defense then argued that the details of the prior violation were not germaine; the only relevant facts related to the current violation, which only involved him being near Ms. Chaddick's residence. Defense counsel pointed out that Defendant said he misunderstood the parameters of the protective order. Moreover, Defendant's job allowed him to pay a good amount of child support, and he was due to leave to work in the oilfield industry. The defense then requested a $5,000.00 bond, and Defendant had expressed his consent to an ankle monitor.

The State responded that such a low bond was not applicable. Defendant's prior violation had been two days prior, and posting nude photographs of Ms. Chaddick had nothing to do with protecting his children. Moreover, Defendant stopped to look in Ms. Chaddick's house rather than just walking by in an effort to move between locations. The prosecution asked that, should the district court find bond to be appropriate, bail be set at $100,000.00 and electronic monitoring be required.

The trial court then gave the following reasons for denying Defendant bail:

> THE COURT: You know, I'm just not convinced at all. I'm afraid it is escalating[,] and I felt that posting of the pictures of the ex-spouse as well as him being in the neighborhood, as well as the prior bench warrants, I mean, I just see an escalation here that could erupt into something not very good. So with that, I'm going to hold him without bond.

In brief, defense counsel argues the trial court abused its discretion by denying Defendant bail on a misdemeanor charge because the State failed to produce sufficient evidence at the Gwen's Law Hearing to establish Defendant was an imminent danger to others. Defendant alleges the State presented scant

evidence of imminent danger. Defendant concedes this was not the first violation of the protective order. On June 8, 2017, Ms. Chaddick contacted the police about text messages Defendant was sending her; however, Ms. Chaddick declined to file charges. On June 10, 2017, Defendant claims his violation consisted of just walking by and pausing to look at Ms. Chaddick's house on his way to visit his cousin; this occurred within 100 yards of the residence. Upon his arrest, Defendant claimed he thought he was supposed to stay 100 feet away. Defendant contends that, despite the State's assertion that Defendant admitted to posting nude photographs of Ms. Chaddick, the prosecution presented no evidence of that confession at the hearing.

The defense urges, moreover, the State failed to present persuasive evidence that Defendant was a flight risk under La.Code Crim.P. art. 332. The prosecution presented evidence that, for a prior theft charge, Defendant failed to appear for arraignment and for a later revocation hearing.

Denial of bail is reviewed for abuse of discretion. *State v. Jacobs*, 12-2737 (La. 12/20/12), 108 So.3d 757. Under "Gwen's Law," a trial court can deny bail if it finds that there is clear and convincing evidence that the defendant either might flee or pose an imminent danger to another or the community:

> A. (1) This Paragraph may be cited as and referred to as "Gwen's Law".
>
> (2) A contradictory bail hearing, as provided for in this Paragraph, may be held prior to setting bail for a person in custody who is charged with domestic abuse battery, violation of protective orders, stalking, or any felony offense involving the use or threatened use of force or a deadly weapon upon the defendant's family member, as defined in R.S. 46:2132 [an ex-spouse is included in the list] or upon the defendant's household member as defined in R.S. 14:35.3 [an ex-spouse is also included in this list], or upon the defendant's dating partner, as defined in R.S. 46:2151. If the court orders a contradictory hearing, the hearing shall be held within five days from the date of determination of probable cause, exclusive of weekends and legal holidays. At the contradictory hearing, the court shall

determine the conditions of bail or whether the defendant should be held without bail pending trial. If the court decides not to hold a contradictory hearing, it shall notify the prosecuting attorney prior to setting bail.

(3) In addition to the factors listed in Article 316, in determining whether the defendant should be admitted to bail pending trial, or in determining the conditions of bail, the judge or magistrate shall consider the following:

*(a) The criminal history of the defendant.*

*(b) The potential threat or danger the defendant poses to the victim, the family of the victim, or to any member of the public, especially children.*

(c) Documented history or records of any of the following: substance abuse by the defendant; *threats of suicide by the defendant*; *the defendant's use of force or threats of use of force against any victim*; strangulation, forced sex, *or controlling the activities of any victim by the defendant*; or threats to kill. *Documented history or records may include but are not limited to sworn affidavits, police reports, and medical records.*

(4) Following the contradictory hearing and based upon the judge's or magistrate's review of the factors set forth in Subparagraph(A)(3) of this Article, *the judge or magistrate may order that the defendant not be admitted to bail, upon proof by clear and convincing evidence either that the defendant might flee, or that the defendant poses an imminent danger to any other person or the community.*

(5) If bail is granted, with or without a contradictory hearing, the judge or magistrate shall comply with the provisions of Article 320, as applicable. The judge or magistrate shall consider, as a condition of bail, a requirement that the defendant wear an electronic monitoring device and be placed under active electronic monitoring and house arrest. The conditions of the electronic monitoring and house arrest shall be determined by the court and may include but are not limited to limitation of the defendant's activities outside the home and a curfew. The defendant may be required to pay a reasonable supervision fee to the supervising agency to defray the cost of the required electronic monitoring and house arrest. A violation of the conditions of bail may be punishable by revocation of the bail undertaking and the issuance of a bench warrant for the defendant's arrest or remanding of the defendant to custody or a modification of the terms of bail.

B. Upon motion of the prosecuting attorney, the judge or magistrate may order the temporary detention of a person in custody who is charged with the commission of an offense, for a period of not

more than five days, exclusive of weekends and legal holidays, pending the conducting of a contradictory bail hearing. ***Following the contradictory hearing, upon proof by clear and convincing evidence either that there is a substantial risk that the defendant might flee or that the defendant poses an imminent danger to any other person or the community, the judge or magistrate may order the defendant held without bail pending trial.***

La.Code Crim.P. art. 313(A) and (B) (emphasis added).

The general factors for setting bail referenced by the "Gwen's Law" article are as follows:

The amount of bail shall be fixed in an amount that will ensure the presence of the defendant, as required, and the safety of any other person and the community, having regard to:

(1) The seriousness of the offense charged, including but not limited to whether the offense is a crime of violence or involves a controlled dangerous substance.

(2) The weight of the evidence against the defendant.

(3) The previous criminal record of the defendant.

(4) The ability of the defendant to give bail.

(5) The nature and seriousness of the danger to any other person or the community that would be posed by the defendant's release.

(6) The defendant's voluntary participation in a pretrial drug testing program.

(7) The absence or presence in the defendant of any controlled dangerous substance.

(8) Whether the defendant is currently out on a bail undertaking on a previous felony arrest for which he is awaiting institution of prosecution, arraignment, trial, or sentencing.

(9) Any other circumstances affecting the probability of defendant's appearance.

(10) The type or form of bail.

La.Code Crim.P. art. 316.

In *State v. Anderson*, 17-257 (La.App. 3 Cir. 3/27/17) (unpublished opinion), this court upheld a denial of bail under Gwen's Law following the defendant's arrest for domestic abuse battery, in violation of La.R.S. 14:35.3. Between the commission of the offense and the bail hearing, the two parties communicated by telephone, were civil, and professed their love for one another. The victim expressed her desire that the defendant be allowed bail and that there be no restraining order issued in the case. At the "Gwen's Law" hearing, the trial court

denied bail based upon the battery and issued a two-year protective order. The defense argued that denial of bond in a misdemeanor case was unreasonable. The defense did not seek review by the supreme court.

In *State v. Choplin*, 16-499 (La.App. 3 Cir. 6/17/16) (unpublished opinion), this court ruled that the State failed to present clear and convincing evidence to support the denial of bail under La.Code Crim.P. art. 330.3 in a case where the denial of bail followed an initial arrest for domestic abuse battery.[1] The supreme court disagreed and reinstated the district court's ruling denying bail; it held that evidence the defendant had committed a domestic abuse battery upon the victim while under protective order constituted clear and convincing evidence the defendant presents an imminent danger to the victim. *State v. Choplin*, 16-1190 (La. 6/24/16), 192 So.3d 779.

In *State v. Burke*, 15-349 (La.App. 3 Cir. 4/24/15) (unpublished opinion), this court found the trial court abused its discretion in denying bail under "Gwen's Law." The defendant had been charged with domestic abuse aggravated assault, in violation of La.R.S. 14:37.7, for throwing a knife and a hammer at her boyfriend during an altercation. The defendant resisted officers during the arrest both physically and through verbal abuse. The defendant had a prior conviction for disturbing the peace and pending felony charges for home invasion, simple battery, and aggravated assault relating to the same victim as the domestic abuse case. The defendant had been twice previously arrested for domestic abuse battery involving the same victim, but the charges were dropped when the victim failed to appear for trial. The defendant was actually out on bail for an incident involving the same victim when she was arrested for the domestic abuse aggravated assault. Defense

---

[1]Louisiana Code of Criminal Procedure Article 330.3 was repealed by 2016 La. Acts No. 613, § 4.

counsel pointed out that the abuse went both ways; the victim was currently charged with domestic abuse battery for actions toward the defendant. The State did not apply for certiorari by the supreme court.

In *State v. Anderson*, 06-755 (La.App. 3 Cir. 7/10/06) (unpublished opinion), this court found the trial court did not abuse its discretion in revoking the defendant's bond. The defendant had been charged with domestic abuse battery, simple burglary, two counts of violating a protective order, unauthorized entry of an inhabited dwelling, obstruction of a court order, aggravated assault, and stalking, all pertaining to his ex-wife. After bonding out of jail, the defendant continued to contact his ex-wife. The defense did not seek certiorari by the supreme court.

In *State v. LaHaye*, 02-727 (La.App. 3 Cir. 6/24/02) (unpublished opinion), this court found the district court abused its discretion in ordering the defendant held without bond under "Gwen's Law." LaHaye was charged with sexual battery, in violation of La.R.S. 14:43.1, but the day before, he had been charged with numerous sex offenses involving juveniles. The defendant's pregnant wife of six weeks expressed fear for her safety should he discover she assisted the investigators; she eventually obtained a restraining order. Furthermore, the juvenile victims were unsure of the defendant's reaction should he become aware they had been interviewed. Additionally, the defendant was a doctor with a successful practice, had a passport, possessed firearms, and owned land sufficient enough to operate a cattle ranch. The supreme court disagreed and reversed this court's ruling; it held, "The trial court did not abuse its discretion in finding defendant is a flight risk and imposes an imminent danger to others." *State v. LaHaye*, 02-1769 (La. 6/27/02), 819 So.2d 1025.

The evidence the State presented at the hearing showing Defendant might flee is that Defendant works offshore and that Defendant has repeatedly failed to appear for prior court proceedings.

The evidence the prosecution introduced at the hearing showing Defendant poses an imminent danger to Ms. Chaddick is that, beginning April 16, 2017, Defendant began committing offenses against Ms. Chaddick. The first offense was home invasion; as a result, a protective order was issued on April 27, 2017, in an attempt to prevent Defendant from harming or harassing Ms. Chaddick. Exactly six weeks later, on June 8, 2017, Defendant violated the protective order by texting Ms. Chaddick, by hacking her email, and by posting her private images in a public forum along with commentary. A mere two days later, Defendant, who had previously forced his way into Ms. Chaddick's home was found there within the perimeter established by the court order. Defendant admitted to looking into her residence. Additionally, there was a mention that, at some point, Defendant threatened suicide.

The information in the record, i.e., the protective order, shows that Defendant works offshore with a twenty-one-day work period with ten days off. Two work periods, back-to-back without break, would be forty-two days, which is exactly six weeks. Defendant's work schedule means that, at least for the bulk of the time between the issuance of the protective order and the commencement of harassment in June, Defendant was working offshore and could not readily access Ms. Chaddick. It is clear that Defendant has harassed Ms. Chaddick at any time he has had access to her.

The trial court did not abuse its discretion by finding the facts of the case show by clear and convincing evidence Defendant is an imminent danger to Ms. Chaddick.

**WRIT DENIED:** Defendant filed a writ application with this court seeking supervisory review of the trial court's June 15, 2017, decision to deny bail based upon a finding that Defendant poses an imminent danger to the victim under La.Code CrimP. art. 313. Our review of the record and jurisprudence suggests that there is no error in the trial court's ruling. Accordingly, Defendant's writ application is denied.