# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

### 18-467

**STATE OF LOUISIANA**

**VERSUS**

**NATASHA POIRIER**

\*\*\*\*\*\*\*\*\*\*

ON WRIT OF CERTIORARI FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, DOCKET NO. 2018-OP-2919
HONORABLE JULES EDWARDS, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

**JOHN E. CONERY**
**JUDGE**

\*\*\*\*\*\*\*\*\*\*

Court composed of Shannon J. Gremillion, John E. Conery, and Van H. Kyzar, Judges.

**WRIT DENIED.**

**Michael Gregory**
**15th JDC Public Defender Office**
**600 Jefferson Street, Suite 902**
**Lafayette, Louisiana 70502**
**(337) 232-9345**
**COUNSEL FOR DEFENDANT/APPELLANT:**
     **Natasha Poirier**

**Keith Stutes**
**Emilia Salas Pardo**
**15th Judicial District Attorney Office, Lafayette Parish**
**800 S. Buchanan Street**
**Lafayette, Louisiana 70502**
**COUNSEL FOR APPELLEE:**
      **State of Louisiana**

**CONERY, Judge.**

Defendant, Natasha Poirier, was arrested on May 9, 2018, for second degree battery and false imprisonment of her mother, violations of La.R.S. 14:34.1 and La.R.S. 14:46, respectively, which took place on April 25, 2018.  A contradictory hearing (also known as a Gwen's Law hearing) occurred on May 14, 2018.  Following the presentation of evidence and argument by counsel, the trial court denied bail and issued a protective order against Defendant in favor of the victim.

Defendant filed notice of intent to seek supervisory review by this court on May 22, 2018, and a return date of June 14, 2018 was set by the trial court.  Defendant's writ was timely filed.  In her application, Defendant contends the trial court abused its discretion in denying her request for bail because the State failed to produce sufficient evidence to establish that she was presumptively guilty of the charges against her, a danger to others, or a flight risk.  Defendant also asserts that the trial court erroneously shifted the burden of production to her while also preventing her from presenting relevant evidence, which denied her the right to be free from excessive bail and her right to a fair hearing under the due process clauses of the Louisiana and Federal Constitutions.  For the following reasons, Defendant's writ application is denied.

**GWEN'S LAW HEARING:**

At the Gwen's Law hearing, the State made argument to the trial court and admitted several exhibits; it did not call witnesses.  In its argument, the State asserted that on the morning of April 25, 2018, Defendant hit her mother with a closed fist, strangled her until she nearly asphyxiated, and then prohibited her from leaving the residence.  Four and a half hours after the incident occurred, the victim managed to escape and called 911.  Police responding to the domestic disturbance call noted

contusions to the victim's face and bruising all over her body. Photographs of the victim's injuries were admitted as State's Exhibit 1. According to counsel, officers spoke to a witness who stated she heard the victim calling out for help and saw Defendant dragging the victim across concrete. Allegedly, the witness approached Defendant and asked if the victim needed help, but Defendant declined, stating "[they] were fine."

During its argument, the State informed the trial court that Defendant pled guilty in 2015 to a 2011 simple battery of her mother. Evidence of that prior conviction was admitted as State's Exhibit 2. The State also advised the trial court that Defendant had been arrested in 2005 for domestic abuse battery, pled guilty to a drug offense in 2004, and had previously been convicted of criminal mischief and a marijuana offense. Counsel stated that warrants for Defendant's arrest had been issued because she failed to appear for court after being arrested in 2005, 2010, 2011, 2013, and 2015. Finally, Defendant's jail packet, including the affidavit supporting the arrest warrant for the instant charges, was introduced as State's Exhibit 3.

Defendant called Calvin Paul St. Julien, Jr., to testify on her behalf. St. Julien testified that he had two children with Defendant and had known her at least twenty years. He and Defendant were in a romantic relationship and saw each other daily at the time of the offenses. St. Julien testified that Defendant had a history of drug addiction, which began approximately fifteen years earlier, and that Defendant entered a treatment program approximately a year earlier. St. Julien believed Defendant had begun using drugs at some point in the year after leaving the treatment program and was using drugs at the end of April 2018. He also assumed Defendant was using drugs during the time of her prior convictions.

St. Julien testified that Defendant suffered from mental illness and would stop taking her prescribed medication, which often coincided with resumption of her illegal drug use. St. Julien testified that Defendant was one hundred percent better when she was on her medication and that Defendant checked herself into "Vermilion" and got back on the proper medication for her mental illness after the April 25, 2018 incident. St. Julien did not know of Defendant fighting or getting into trouble when she was off drugs.

No other evidence was presented at the hearing. During closing arguments, defense counsel requested that the trial court set reasonable bond and if Defendant was unable to make bond, she be released to an in-patient mental health program or alternatively home incarceration conditioned on her participation in out-patient drug treatment and regular mental health treatment. The trial court denied the request, stating:

> [T]he evidence that you [(defense counsel)] have presented is that this lady has a mental health condition, this lady has a substance abuse disorder . . .
>
> . . . .
>
> [H]ouse arrest with electronic monitoring is insufficient for a person who has this kind of criminal history, and who has a mental health diagnosis and a substance abuse disorder diagnosis.
>
> This lady -- the evidence does indicate that this lady presents a significant danger to her mother, and for that reason I will order that she be detained without bond. I am going to order that there be a protective order issued in this case that would be valid for two years.

## ASSIGNMENT OF ERROR NO. 1:

In her first assignment of error, Defendant contends the State failed to produce sufficient evidence to establish she was presumptively guilty of the charged crimes, a danger to others, or a flight risk.

We review the denial of bail for abuse of discretion. *State v. Jacobs*, 12-2737 (La. 12/20/12), 108 So.3d 757. "Under 'Gwen's Law,' a trial court can deny bail if it finds that there is clear and convincing evidence that the defendant either might flee or pose an imminent danger to another or the community[.]" *State v. Goodie*, 17-693, p. 7 (La.App. 3 Cir. 8/23/17), 226 So.3d 1130, 1134, *writ denied*, 17-1633 (La. 11/28/17), 229 So.3d 936. Louisiana Code of Criminal Procedure Article 313, commonly referred to as "Gwen's Law," permits a trial court to conduct a contradictory bail hearing before determining the conditions of bail or whether the defendant should be held without bail pending trial:

> In addition to the factors listed in Article 316, in determining whether [a] defendant should be admitted to bail pending trial, or in determining the conditions of bail, the [trial] judge [ ] shall consider the following:
>
> (a) The criminal history of the defendant.
>
> (b) The potential threat or danger the defendant poses to the victim, the family of the victim, or to any member of the public, especially children.
>
> (c) Documented history or records of any of the following: substance abuse by the defendant; threats of suicide by the defendant; the defendant's use of force or threats of use of force against any victim; strangulation, forced sex, or controlling the activities of any victim by the defendant; or threats to kill. Documented history or records may include but are not limited to sworn affidavits, police reports, and medical records.

La.Code Crim.P. art. 313(3). Gwen's Law allows the trial court to deny bond if it finds proof "by clear and convincing evidence either that the defendant might flee, or that the defendant poses an imminent danger to any other person or the community." La.Code Crim.P. art. 313(4).

The La.Code Crim.P. art. 316 factors referenced in Gwen's Law require the court to also consider:

4

(1) The seriousness of the offense charged, including but not limited to whether the offense is a crime of violence or involves a controlled dangerous substance.

(2) The weight of the evidence against the defendant.

(3) The previous criminal record of the defendant.

(4) The ability of the defendant to give bail.

(5) The nature and seriousness of the danger to any other person or the community that would be posed by the defendant's release.

(6) The defendant's voluntary participation in a pretrial drug testing program.

(7) The absence or presence in the defendant of any controlled dangerous substance.

(8) Whether the defendant is currently out on a bail undertaking on a previous felony arrest for which he is awaiting institution of prosecution, arraignment, trial, or sentencing.

(9) Any other circumstances affecting the probability of defendant's appearance.

(10) The type or form of bail.

La.Code Crim.P. art. 316.

Defendant argues the trial court failed to find that the proof offered by the State was evident and that the presumption of her guilt was great, as required by La.Const. art. 1, § 18 before a trial court can deny bail. Louisiana Constitution Article 1, § 18 states, in pertinent part:

(A) Excessive bail shall not be required. Before and during a trial, a person shall be bailable by sufficient surety, except when he is charged with a capital offense and the proof is evident and the presumption of guilt is great. . .

(B) However, a person charged with a crime of violence as defined by law . . . and the proof is evident and the presumption of guilt is great, shall not be bailable if, after a contradictory hearing, the judge [ ] finds by clear and convincing evidence that there is a substantial risk that the person may flee or poses an imminent danger to any other person or the community.

5

The issue of the applicability of La.Const. art. 1, § 18 was not raised by Defendant in the trial court and is, therefore, not properly before this court for review. Uniform Rules—Courts of Appeal, Rule 1-3.

Defendant also argues the State failed to show by clear and convincing evidence that she posed a future danger to her mother. She alleges the evidence submitted failed to establish it was highly probable that she is a future danger to her mother and the trial court misapplied the clear and convincing standard. In support of this argument, Defendant again notes the State presented no eyewitness testimony but relied on the affidavit for the warrant of arrest, pictures that were submitted without explanation of how they came to be, and Defendant's criminal history.

Although Defendant acknowledges that hearsay is admissible at bond proceedings, she argues that the fact that the evidence is unable to be challenged must be considered in determining the weight to be given to the evidence. Defendant contends she was unable to confront the sources of the State's evidence and unable to ask questions to determine the information's validity.

The provisions of the Louisiana Code of Evidence do not apply to "[p]roceedings with respect to release on bail." La.Code Evid. Art. 1101(C)(2). However, Defendant was entitled to subpoena persons, including the investigating officers, to testify at the Gwen's Law hearing, thus Defendant clearly was not deprived of her ability to confront the sources of the State's evidence. Her failure to exercise her right to subpoena witnesses does not create a deprivation of constitutional rights.

Defendant further argues that past conduct cannot serve as de facto proof of potential, imminent danger in the future. However, criminal history and

6

"[d]ocumented history or records" of the use of threats or force against any victim, which includes but is not limited to sworn affidavits, police reports, and medical records, can be considered by the trial court during a Gwen's Law hearing. *See* La.Code Crim.P. art. 313(A)(3)(a) and (A)(3)(c).

**Sufficiency of the Evidence:**

We now address whether the State presented clear and convincing evidence that Defendant was a danger to her mother and find the trial court did not abuse its discretion when it denied Defendant bond. This court addressed evidence sufficient to deny bond during a Gwen's Law hearing in *Goodie*, 226 So.3d at 1136-37 (footnote omitted):

> In *State v. Anderson*, 17–257 (La.App. 3 Cir. 3/27/17) (unpublished opinion), this court upheld a denial of bail under Gwen's Law following the defendant's arrest for domestic abuse battery, in violation of La.R.S. 14:35.3. . . .

> In *State v. Choplin*, 16–499 (La.App. 3 Cir. 6/17/16) (unpublished opinion), this court ruled that the State failed to present clear and convincing evidence to support the denial of bail under La.Code Crim.P. art. 330.3 in a case where the denial of bail followed an initial arrest for domestic abuse battery. The supreme court disagreed and reinstated the district court's ruling denying bail; it held that evidence the defendant had committed a domestic abuse battery upon the victim while under protective order constituted clear and convincing evidence the defendant presents an imminent danger to the victim. *State v. Choplin*, 16-1190 (La. 6/24/16), 192 So.3d 779.

> . . . .

> In *State v. Anderson*, 06–755 (La.App. 3 Cir. 7/10/06) (unpublished opinion), this court found the trial court did not abuse its discretion in revoking the defendant's bond. The defendant had been charged with domestic abuse battery, simple burglary, two counts of violating a protective order, unauthorized entry of an inhabited dwelling, obstruction of a court order, aggravated assault, and stalking, all pertaining to his ex-wife. After bonding out of jail, the defendant continued to contact his ex-wife.

7

In *State v. Duhon*, 18-414 (La.App. 3 Cir. 6/12/18) (unpublished opinion), the trial court ordered the defendant held without bail. The defendant was charged with domestic abuse battery for choking and striking his girlfriend. At the Gwen's Law hearing, the State introduced the defendant's jail packet, read from an arrest affidavit, and informed the trial court that the victim had recanted her statement.

The defendant's jail packet indicated he had a pending charge for simple escape, a 2017 misdemeanor conviction for domestic abuse battery against the same girlfriend, a 2012 conviction for unauthorized entry of an inhabited dwelling, a 2005 second degree battery charge, and a 2001 conviction for simple battery. This court denied the defendant's writ application, concluding the trial court did not abuse its discretion in finding clear and convincing evidence that the defendant was an imminent threat to another considering the defendant's prior conviction for domestic abuse battery against the same victim.

Considering this jurisprudence, the trial court did not abuse its discretion in finding the State presented clear and convincing evidence that Defendant was a danger to the victim.

Defendant further contends the State failed to show by clear and convincing evidence that she might flee. Louisiana Code of Criminal Procedure Article 313(A)(4) (emphasis added) states, in part: "the judge or magistrate may order that the defendant not be admitted to bail, upon proof by clear and convincing evidence either that the defendant might flee, **or** that the defendant poses an imminent danger to any other person or the community." The disjunctive use of or means the State need not have proven by clear and convincing evidence that Defendant might flee because there was sufficient proof that she posed an imminent danger to the victim.

8

**ASSIGNMENT OF ERROR NO. 2:**

In her second assignment of error, Defendant contends the trial court shifted the burden of proof to her and prevented her from presenting relevant evidence, which denied her right to due process.

The first part of Defendant's argument is that she was prevented from introducing evidence relevant to whether she was an imminent danger to another when the trial court sustained several objections to St. Julien's testimony. Defendant asserts that her behavior is drastically different when she is not actively using drugs, and that she checked herself into treatment for drug addiction after the offenses. She claims her behavior when she is not using drugs is the measuring stick a court should use to determine if she is a future danger.

The State objected on grounds of relevance to defense counsel's questioning of St. Julien about his "impressions" of Defendant's living environment at the end of April 2018. That objection was sustained. Defendant lived with the victim at the end of April, and St. Julien's "impressions" of that living environment have no relevance on a bond determination.

When St. Julien was asked by defense counsel how Defendant's drug history changed around the end of April, the State objected on the same basis as previously set forth. That objection was also sustained. After argument from defense counsel, the trial court stated: "[i]f you want to present evidence that you're going to have someone follow this woman around 24/7 to assure [me] that she is not using drugs, then this line of questioning would be relevant. Until that happens it's not relevant."

The State next objected to defense counsel asking St. Julien why the Defendant was using drugs at the end of April. The reason for Defendant's drug use

9

is not relevant to her bond and not a factor for consideration under either La.Code Crim.P. art. 313 or La.Code Crim.P. art. 316.

Defendant also complains about the State's objection to defense counsel's asking St. Julien if the victim had a history of drug use. The trial court sustained the objection, finding it was irrelevant because that would not give anyone "permission to commit a crime against them." Defense counsel claimed the question was asked to show that the victim's drug use led to Defendant's drug use. The trial court stated: "No one can make another individual use drugs." The trial court's finding that the matter was irrelevant was correct, as it is a defendant's behavior at issue at a bond hearing and not that of the victim.

St. Julien testified Defendant went through treatment for drug abuse a year prior. He was then asked how long she was clean and sober. The State objected to the question based on relevancy, and the trial court sustained the objection. In his very next question, defense counsel asked St. Julien to talk about what Defendant was like when she was off drugs. An objection to that question was also sustained. Defense counsel went on to ask St. Julien to talk a little about how Defendant was when she was not using drugs. An objection to that question was sustained. The court told defense counsel that he needed to "try a little more effectively." How long Defendant had been sober may have been relevant to the issue of her bond. However, it is clear Defendant has a long history of drug use and has battered the victim on more than one occasion. St. Julien testified he did not know of Defendant fighting or getting into trouble when she was sober. However, he felt she was using drugs at the end of April and at the time of her prior convictions, which shows a tendency to commit crimes when she uses drugs.

Defendant's second claim is that the trial court considered the lack of evidence presented by her as part of its reason for ruling, impermissibly shifting the burden of production to her. Defendant claims the trial court penalized her for not issuing subpoenas for the officer who wrote the report to testify, not presenting evidence that she was diagnosed with a mental health condition and what that condition was, not presenting what medication she requires and if she was compliant, and not presenting evidence that she participated in a detoxification program after the incidents. Defendant had the burden of presenting a defense to the State's attempt to prove that she should be held without bond, and the trial court did not shift that burden of proof. For the reasons set forth herein, we find Defendant's second assignment of error lacks merit.

## CONCLUSION:

Defendant's writ application is denied. We find that the trial court did not abuse its discretion in denying bail to Defendant.

**WRIT DENIED.**