Nos. 832 and 833 (Two Cases)

First Circuit

—

## GUINN v. KEMP ET AL.

—

(October 7, 1931. Opinion and Decree.)
(November 4, 1931. Case Compromised and Application for Rehearing Withdrawn.)

—

Benton & Benton, D. J. Sanchez and Dudley Weber, of Baton Rouge, attorneys for plaintiff, appellee.

Breazeale & Sachse, of Baton Rouge, attorneys for defendants, appellants.

**4**

ELLIOTT, J. An automobile belonging to and while being driven by Mrs. Ola Guinn, widow of W. J. Guinn, deceased, and in which was riding as her guest Eugenia Guinn, her niece, minor daughter of J. L. Guinn, was struck by an automobile belonging to W. J. Kemp, while being driven by his wife, Mrs. Pearler Kemp, with the result that Mrs. Ola Guinn and Eugenia Guinn were both badly injured.

The collision occurred on September 10, 1930, in the city of Baton Rouge, Subdivision Istrouma, at the intersection of Ontario and Pocahontas streets.

Mrs. Ola Guinn brought suit against W. J. Kemp and his wife, Mrs. W. J. Kemp, for damages resulting from the collision. Her claim is for physician's and nurse's fees, medical and surgical bills, pain and suffering, impairment of hearing, and loss of her automobile—a total of $7,800.

J. L. Guinn brought suit at the same time for $300 as due himself on account of physician's and nurse's fees, medical, hospital, surgical bills, and X-ray pictures necessary in the treatment of his daughter Eugenia. He further claims of them the sum of $10,000 for the use and benefit of his daughter Eugenia on account of her personal injuries, impairments, pain, and suffering—a total of $10,300. The petitions of the two plaintiffs each allege that the collision was due to the reckless, excessive speed and want of care on the part of Mrs. Kemp in driving her automobile into said intersection from Pocahontas street, into which the plaintiff Mrs. Ola Guinn had already entered from Ontario street.

That the defendant W. J. Kemp has an insurance policy in the Georgia Casualty Company under the terms of which the said company being primarily liable to each of them for the amount claimed, the company was made a party defendant in each case.

W. J. Kemp and Georgia Casualty Company each filed an exception of misjoinder in each of the suits, urging that the casualty company should not have been made a party defendant. While this exception was pending and without action having been taken thereon, Georgia Casualty Company filed a further exception of no cause or right of action, in that $5,000 being the limit of the policy issued to W. J. Kemp, it could not be sued for an amount in excess of that sum. That no suit should be filed on the policy until after the amount of the loss had been fixed and rendered certain by a final judgment against the assured. It further urged alternatively that the Act No. 55 of 1930 under which the suit against it had been brought, if applied to the policy in question, was unconstitutional.

The exception of no right or cause of action was sustained and both suits as to Georgia Casualty Company were dismissed.

There was no appeal from that ruling. This judgment of dismissal, in so far as regards the joinder of Georgia Casualty Company as a defendant herein, is therefore not before us on appeal and calls for no action on our part. The failure to appeal from this judgment also eliminates from the case the question of applicability of Act No. 55 of 1930 to the policy in question.

The defendants Mr. and Mrs. Kemp, each answering each of the suits, deny the negligence alleged by the plaintiffs against Mrs. Kemp and allege that the collision was due entirely to the fault and negligence of the plaintiff Mrs. Ola Guinn and

Eugenia Guinn. In the alternative and in case it be found that there was negligence or want of care on the part of Mrs. Kemp, they allege that there was also negligence and want of care on the part of Mrs. Guinn and Eugenia Guinn, leading to the collision; that their negligence contributed to bring it about and that no recovery could be had of them on said account.

The two suits, each based on the same collision, the defenses in each being practically the same, the issue in each largely dependent on the same testimony, were consolidated, tried together, and decided in the same judgment.

There was judgment in the lower court in favor of Mrs. Ola Guinn and against Mrs. W. J. Kemp for $1,200, and in favor of J. L. Guinn and against Mrs. W. J. Kemp for $3,000 for the use and benefit of Eugenia Guinn.

No judgment was rendered on the demand of Mrs. Ola Guinn and J. L. Guinn against W. J. Kemp.

The failure of the lower court to act on the demand of Mrs. Ola Guinn and J. L. Guinn against W. J. Kemp amounts to a rejection of their demand against him. The failure is not urged in plaintiffs' brief as error, so we look on plaintiffs' claim against W. J. Kemp as abandoned and have not considered it on appeal.

The court did not act on the claim of J. L. Guinn individually against Mrs. W. J. Kemp for $300, for which he was obligated legally as father of Eugenia. The failure amounts to a rejection of the same, but J. L. Guinn has appealed and urges in his brief that this was error; consequently this matter will be reviewed.

The petition of the plaintiffs aver, and the answer of the defendants practically admits, that the Subdivision Istrouma is within the limits of the city of Baton Rouge, but the city ordinances concerning speed, traffic, rights of way, etc., at the place in question, if any exist, were not offered in evidence, proven on the trial, and there are no admissions in the record on the subject.

Act No. 169 of 1898, with amendments, under which the city of Baton Rouge was incorporated, contains no provisions of the kind mentioned.

The evidence shows that Ontario and Pocahontas streets are both public streets and used as such by the public.

Speaking generally all streets may be said to be highways. Elliott on Roads and Streets (3d Ed.) subject Streets, sec. 19, p. 21; Dillon on Municipal Corporations, vol. 2, subject Streets, pp. 805 and 806, secs. 676 and 680.

All highways are not streets, but the streets in question may be regarded as coming within the law on that subject.

The word "highway" is defined in Act No. 296 of 1928 (section 2) to mean, "Every way or place of whatever nature open to the use of the public, as a matter of right, for purposes of vehicular travel."

The word "street" is used in the title of the act and in section 11 of the body of the act.

The term "local authorities" is defined in the act (section 2) to mean, "Every parish, municipal and other local board or body having authority to adopt local police regulations under the constitution and laws of this State."

Section 5, subsection (c), section 18, subsection (b), and section 35 makes the traffic and speed ordinances, and regulations

of local authorities, subservient to the act, except in particular and specified instances. In this instance no ordinance, regulation, or other provision of the city of Baton Rouge having been produced, we take as governing law the Highway Act to the extent applicable to an intersection of the kind in question.

The evidence shows that Mrs. Ola Guinn was driving west on Ontario, and Mrs. Kemp south on Pocahontas streets, at about 9 o'clock a. m. on the day stated. Weather conditions are not spoken of as unfavorable to seeing ahead. We therefore assume that ordinary weather conditions as to seeing prevailed at the time.

The speed at which Mrs. Guinn and Mrs. Kemp were each driving and the care or want of care which each observed on entering the intersection are therefore matters of great importance in the determination of the case.

Mrs. Guinn estimates her own speed as she reached the intersection at about 12 or 15 miles an hour. Eugenia Guinn estimates it at about 12 or 14 miles an hour.

Mrs. Guinn, speaking of the time she reached the intersection, says that she looked up and down the intersecting street and did not see the Kemp car:

"Q. You could have stopped it instantly if you had wanted to?
"A. Yes.
"Q. You looked up and down the street when you got to the corner?
"A. Yes.
"Q. You did not see this car coming?
"A. I didn't. It came out so fast.
"Q. That is an open street?
"A. One side of it.
"Q. The side Mrs. Kemp was coming on was open?
"A. Yes.
"Q. You could have seen her?
"A. Yes.

"Q. But you did not see her?
"A. No.
"Q. You do not remember anything immediately after the accident?
"A. No. I was knocked unconscious."

Eugenia Guinn:

"Q. You did not see Mrs. Kemp's car at any time?
"A. No. I do not remember seeing it at all.
"Q. You do not remember seeing it at all?
"A. No."

Mrs. Kemp says:

"Q. As you approached this intersection did you see any car approaching from the east?
"A. Just before I got to the corner I blew my horn; there was a lot of weeds on that side and just as I entered the intersection I seen this car coming and I threw on my brakes. She was in the middle of the street; that is when the collision took place."

In another place she says:

"Q. Who got into the intersection first?
"A. It must have been me, because I hit her in front of the car; more in front than I did in the back.
"Q. You mean to say you got into Ontario street, which is a street that runs east and west, before she got into Pocahontas street?
"A. We were in there just about the same time, or I could not have hit her as near the middle of the car as I did.
"Q. What part of Ontario street was she driving on?
"A. She was coming right up the center of the street.
"Q. What part of the street were you driving on?
"A. Coming on my right-hand side.
"Q. You weren't in the center of the street?
"A. I wasn't in the center of the street.
"Q. You were on the right-hand side of the street?
"A. I was on the right-hand side of the street.
"Q. Going south?

"A. Going south.

"Q. Were you in the middle of the street or on the right-hand side of the street at the time you struck Mrs. Guinn?

"A. I was on my right side.

"Q. You stayed right on the right side of the street?

"A. I was right on my right side of the street.

"Q. And you were on the right side of Pocahontas street at the time you struck Mrs. Guinn's car?

"A. I was on my side, the right side.

"Q. Just how far into Pocahontas street had Mrs. Guinn's car gotten at the time you struck her?

"A. I hit the front of it on my side, on the right-hand side."

Mrs. Grace Kent Evans living on the southeast corner at the intersection of Ontario and Pocahontas streets· says that she was within about 20 feet of the place where the collision took place, looking straight at it when it occurred. She testifies that she did not know at· the time either the plaintiff or the defendant, has no interest in the controversy, and none that we can see appears. Her testimony is plain and straightforward.

Asked ·to estimate the speed of Mrs. Guinn, she said that the Guinn car was concealed from her view by the house in which she lived, except for a distance estimated at about 20 feet, before the impact between it and the Kemp car took place. Her testimony on the subject, at one place, is as follows:

"Q. How fast was the Guinn car going?

"A. I don't know just how fast it was going; just ordinarily, because it was not going very fast; just ordinary driving."

In another place:

"Q. You couldn't see Mrs. Guinn coming? You didn't see her car until it got to the intersection?

"A. Yes, I saw it before it got to the intersection. I saw it when it got to the corner of my house, about 20 feet from the intersection.

"Q. You did not see it approaching then?

"A. No.

"Q. You did not have any way of telling what speed it was coming?

"A. Not until it got there.

"Q. That only gave you 15 or 20 feet from the corner to the intersection?

"A. Yes.

"Q. You could not tell anything about the car?

"A. I just saw it as it came across there.

"Q. Was Mrs. Kemp coming toward you?

"A. Toward me from the north. I could see her car about a block or a block and half away."

In another place:

"Q. You couldn't see Mrs. Kemp approaching very far?

"A. I could see Mrs. Kemp a block and a half.

"Q. I mean Mrs. Guinn?

"A. No, I couldn't see her beyond my house."

According to Mrs. Evans, she was about 20 feet from the place and looking right at the parties at the time the collision took place.

She fixed the speed of Mrs. Guinn at ordinary driving, having reference of course to the intersection in question, the driving at which she was accustomed to observe.

She estimated the speed of Mrs. Kemp, as she came to the place, at between 35 and 40 miles an hour. Defendant introduced .evidence for the purpose of weakening the testimony of Mrs. Evans, but we do not regard her testimony as weakened thereby.

Frank O. Gibbs, son of Mrs. Evans, testified that he saw the Guinn car about 80 feet from the intersection and estimated that it was going at that ·time about 25 miles an hour. Mrs. Guinn could have slowed down to the speed. she claims before entering the intersection.

Mrs. Kemp testified that the Guinn car was running at the time she saw it in the intersection at 30 or 35 miles an hour, and that her own speed at that time was 18 or 20 miles an hour.

Mr. Weber testified that he lives on Pocahontas street about a block from its intersection with Ontario; that he saw the Kemp car pass his house going to the intersection and estimates its speed at the time at about 35 or 40 miles an hour. Mrs. Weber, his wife, says the same.

Mrs. Shelton also testified that she was at the time in a house on Pocahontas street, the third house from the intersection, which she marked on a picture, and that the Kemp car passed her house going toward the intersection at a speed which she estimated at 35 or 40 miles an hour. The speed testified to by Mr. and Mrs. Weber and Mrs. Shelton could have been slowed down before the intersection was reached, but according to Mrs. Evans it was not done.

According to Mr. Brooks, he and his wife arrived at the scene about three minutes after it had happened. Mrs. Guinn and Eugenia Guinn were at the time still in the wreck. Mrs. Kemp had gotten out of her car and was standing at the place talking. He testifies that he addressed her, saying: "Are you the lady that had the wreck?" She said, "Yes." He then said, "I don't see where you put the brakes on." She said: "No, I didn't put any brakes on. I didn't see it until I hit the other car." Mrs. Brooks testified, corroborating her husband.

Mrs. Kemp denied making such a statement and claims that she did not see Mr. and Mrs. Brooks.

There is nothing in the record that in-dicates the width of Ontario and Pocahontas streets, save some pictures made for other purposes. Looking at these pictures the intersection does not appear to be wide enough to give parties entering same with automobiles, and going forward without stopping, to cross more than a few brief moments to see an automobile coming into it from the opposite sides.

The Highway Act, section 5, subsection (b), par. 3, provides, regarding speed:

"Fifteen miles an hour when approaching within fifty feet and in traversing an intersection of highways when the driver's view is obstructed. A driver's view shall be deemed to be obstructed when at any time during the last fifty feet of his approach to intersection, he does not have a clear and uninterrupted view of such intersection and of the traffic upon all of the highways entering such intersection for a distance of two hundred feet from such intersection."

Section 20, subsec. (a):

"When two vehicles approach or enter an intersection at approximately the same time, the driver of the vehicle on the left shall yield the right-of-way to the vehicle on the right except as otherwise provided in section 20. The driver of any vehicle traveling at an unlawful speed shall forfeit any right-of-way which he might otherwise have hereunder." Dameron Pierson Co. v. O. T. Stafford, 1 La. App. 506, 507.

It is well settled in our jurisprudence that a party driving an automobile who first reaches a street intersection has the right of way, provided there is no ordinance or regulation making either one or the other streets a right of way street. 8 Louisiana Digest, Supplement, subject, Automobiles, sec. 37.

A person is not presumed without evidence to violate the law on the subject of speed.

The testimony on the subject, attend-

ant facts and circumstances, does not justify us in holding that the Guinn car was being driven at the time it entered and while crossing this intersection at a speed faster than 15 miles an hour. The evidence shows that it entered the intersection first and had crossed to the western side of it at the time of the impact. It shows that the Kemp car struck the Guinn car and that it was being driven at the time faster than the law permits, entirely too fast for safety; that the speed was such that it did not admit of stopping after entering, rendering a collision between it and the Guinn car, which had already entered and had crossed to the western side of the intersection, the necessary result of its excessive speed.

The noise made by the impact and the damage done to the Guinn car supports the finding that the Kemp car was being driven about as fast as estimated by Mrs. Evans.

According to Mrs. Kemp she kept on the western side of Pocahontas street and the impact took place almost the moment she entered the intersection.

Mrs. Guinn says that she looked both ways as she entered the intersection but that she never saw the Kemp car. Eugenia Guinn says that she never saw it.

Defendant urges this as a reason why plaintiffs cannot recover.

If the occupants of the Guinn car, on entering the intersection, had looked far enough up Pocahontas street, they could not have helped seeing the Kemp car. They either looked too soon, else, after arriving at the proper place to see, they did not look close enough. According to our estimation, the Kemp car was 60 or 70 feet away and its approach should have been observed.

But that cannot excuse Mrs. Kemp. She had the last clear chance. She was coming forward to an intersection already occupied by another car, traveling twice as fast as the occupying car. The Guinn car was making its way across at the rate of about 20 feet a second. The Kemp car, distant 60 or 70 feet at the time up Pocahontas street, was coming to the intersection at a speed of 40 or 50 feet a second. Mrs. Kemp was bound to have anticipated danger ahead of her in the intersection. She was bound to have seen the Guinn car ahead of her. She had ample time to and could and should have slowed down, checked her speed, let the Guinn car, already in the intersection, have the right of way, and pass on its way in safety.

In the case of Tyer v. Gulf, C. & S. F. Ry. Co., 143 La. 177, 78 So. 438, the Supreme Court held (quotation from the syllabus):

"In order to enforce the humanitarian doctrine of 'the last clear chance,' it must appear that plaintiff has clearly shown that defendant, after seeing the danger, could by the exercise of ordinary care have avoided the injury, or, if defendant did not see the danger, it must appear that plaintiff has clearly shown that defendant might by the exercise of ordinary care have seen the danger in time to avoid the injury." Norwood v. Bahm, 14 La. App. 261, 129 So. 183; Cyclopedia of Automobile Law, by Blashfield, vol. 2, subject, Last Clear Chance, pp. 1277 to 1299, secs. 11, 14, 16, 17, 18, 19, and 20, etc.

We therefore find that Mrs. Kemp was entirely to blame for the collision, for the loss and injuries sustained by Mrs. Ola Guinn, the pain and suffering endured by Eugenia Guinn, and for the loss and damage sustained by J. L. Guinn. Defendant contends that Eugenia Guinn was at fault and cannot recover because she should have seen the approach of her car in time to have warned her aunt, caused her to stop and avoid the collision. Eugenia

was a school girl, 16 years of age at the time of the trial. She was riding as a guest of her aunt and charged with no duty in the driving. She says that she never saw the Kemp car; but suppose it be said that she would have seen it when she reached the intersection had she looked closer up Pocahontas street, she had entered the intersection first, had nearly crossed it at the time of the impact. Mrs. Kemp, coming on Pocahontas street and at a distance of 60 or 70 feet away at the time, was bound to have expected danger at the Ontario street intersection, and could not help seeing the car in which Eugenia was riding, and having ample time to do so, she could and should have slowed down, checked her speed, and let the car ahead of her, already nearly across, have the right of way and pass on in safety. Mrs. Kemp is therefore liable to Eugenia Guinn and to her father, J. L. Guinn, for all the damage, injuries, pain, and suffering which they sustained as a result of the collision.

The remaining question for consideration is the amount of damages that should be allowed to the plaintiffs. Mrs. Ola Guinn was awarded $1,200 against Mrs. Kemp, and appealed, claiming that it is not sufficient.

Mrs. Kemp has appealed, and claims that she is not liable at all, but urges in case that the court finds that she is. that the amounts allowed should be reduced.

Mrs. Guinn alleges in her petition that her car was totally destroyed but the evidence shows that it was only damaged and that it cost $99.25 to repair it. Mrs. Guinn has been to considerable expense on account of fees of physicians, nurses, hospital expenses, X-ray pictures. She suffered a fracture of the skull, puncture of the drum of her right ear, endured severe pain for a week or ten days. The evidence indicates that she has recovered from all her injuries, except that the hearing in her right ear has been permanently impaired to the extent of 25 per cent. There is evidence that an injury to the ear when the result of a fractured skull, as is the case here, is liable to produce and bring about atrophy of the nerves of hearing, and not only lead to greater loss of hearing in future, but may involve the other ear. But there is also testimony that such a result is not likely.

We look on the claim that Mrs. Guinn may suffer greater impairment of hearing than she now has, and that the injury may eventually involve the other ear, as not established with that certainty required by law.

We have concluded that the allowance in her favor by the lower court was correct and that it should neither be increased nor decreased.

The injury to Eugenia Guinn was far more serious.

The physical pain and suffering which she endured has impressed us. Her principal injury consisted of a fracture of the pubic bone and ischium. The fracture has healed but with some overlapping of the ends, leaving an abnormal condition which physicians say will be permanent and may prevent bearing children. On account of this injury she was placed in a plaster cast and kept in a state of immobilization for more than two months.

A physician testifying in favor of plaintiff was very firm in his opinion on this subject. But according to other medical testimony, such a result is not certain, and we do not look on the disability claimed

on her account as established with that certainty required by law. But certainly she has undergone intense and protracted suffering. At the time of the trial, however, some five months after the injury, she was able to walk and get about without crutches.

The district judge allowed her father on her account $3,000. The father prays that the amount be increased; the defendant, that it be reduced.

We have concluded that the amount is as near right as we can fix it, and judgment in that respect will stand.

J. L. Guinn, father of Eugenia, claims $300 due him individually on account of physicians', nurses', and hospital fees, X-ray pictures, etc., all necessary on account of her injury. The amount is established and he claims that same should have been allowed him in the lower court. It seems to us that the father should recover this sum. It is a part of the expenses occasioned by the fault of the defendant.

The judgment appealed from will be amended so as to allow the plaintiff J. L. Guinn to recover of Mrs. W. J. Kemp the further sum of $300.

For the reasons stated the judgment appealed from in favor of Mrs. Ola Guinn against Mrs. W. J. Kemp is affirmed.

The judgment in favor of J. L. Guinn for the use and benefit of Eugenia Guinn against Mrs. W. J. Kemp is affirmed.

But it is now ordered and decreed that, in addition to the judgment mentioned, there be judgment in favor of the plaintiff J. L. Guinn, individually, and against Mrs. W. J. Kemp for $300 with legal interest thereon from judicial demand until paid, and that Mrs. W. J. Kemp pay all cost in both cases in both courts.