# STATE OF LOUISIANA

## COURT OF APPEAL, THIRD CIRCUIT

### 19-869

STATE OF LOUISIANA

VERSUS

FRIN WAYNE COWARD

**\*\*\*\*\*\*\*\*\*\***

APPEAL FROM THE
FOURTEENTH JUDICIAL DISTRICT COURT
PARISH OF CALCASIEU, NO. 13147-17
HONORABLE GUY E. BRADBERRY, DISTRICT JUDGE

**\*\*\*\*\*\*\*\*\*\***

## JONATHAN W. PERRY
## JUDGE

**\*\*\*\*\*\*\*\*\*\***

Court composed of Elizabeth A. Pickett, John E. Conery, and Jonathan W. Perry, Judges.

Conery, J., dissents and assigns reasons.

**AFFIRMED AND REMANDED
WITH INSTRUCTIONS.**

**Chad M. Ikerd**
**Louisiana Appellate Project**
**Ikerd Law Firm, LLC**
**Post Office Box 2125**
**Lafayette, Louisiana  70502**
**(337) 366-8994**
**COUNSEL FOR DEFENDANT/APPELLANT:**
    **Frin Wayne Coward**


**John F. DeRosier**
**District Attorney—Fourteenth Judicial District**
**Elizabeth B. Hollins**
**Assistant District Attorney**
**901 Lakeshore Drive, Suite 800**
**Lake Charles, Louisiana  70601**
**(337) 437-3400**
**COUNSEL FOR APPELLEE:**
    **State of Louisiana**

**PERRY, Judge.**

Defendant, Frin Wayne Coward, appeals his sentence for second degree murder. For the reasons that follow, we affirm and remand with instructions.

## FACTS AND PROCEDURAL HISTORY

The basic facts of this case were set forth in a previous unpublished opinion of this court. *State v. Coward*, 18-951 (La.App. 3 Cir. 6/5/19). We state those facts here:

> On the afternoon of March 8, 2017, the Calcasieu Parish Sheriff's Department responded to a 911 call regarding a shooting at a Vinton, Louisiana residence. The caller reported that a man was on the ground. Additional shots were heard on the call.
>
> . . . .
>
> [Sandra] Fruge testified at trial that she arrived at Defendant's residence in the early morning hours of March 8th to stay with [Michael] Fountain, who was residing with Defendant. She explained that she and Mr. Fountain slept until "10:00, 10:30" a.m. During the course of the day, however, Defendant and Mr. Fountain began arguing, with Defendant focusing on Mr. Fountain's difficulties in addressing his mother's recent death. Ms. Fruge explained that Defendant threatened Mr. Fountain during the argument, that he had a holstered gun on his hip, and that he would pat his hip during the argument. Ms. Fruge testified that although both men were violent, she did not see Mr. Fountain become violent that day.
>
> According to Mr. Fountain's sister, Denise Dickerson Authement (Ms. Dickerson), Mr. Fountain telephoned her repeatedly during the course of the day and reported increasingly threatening behavior by Defendant. During one call, Mr. Fountain reported that Defendant "was pulling a gun out." In his final call before the shooting, he asked her to "[c]ome get [him]."
>
> Ms. Fruge explained that as the argument escalated, she began packing Mr. Fountain's belongings in order to leave when she heard gunshots and ran to the front porch. When asked what she saw once on the porch, Ms. Fruge explained:
>
> > Mr. Coward was standing there and he was kind of looking and I was like, "What are you doing? What's going on?" He put his gun up, he did like this and he pointed again, and at that time I seen Mr. Fountain come across. He was holding his neck and the back of his leg.

She confirmed that she then saw Mr. Fountain fall. Ms. Fruge explained that she pushed Defendant "out of the way," jumped from the porch, and ran to Mr. Fountain, who told her "to run." Ms. Fruge stated that she then ran from the scene toward the roadway and explained that as she "got up to run I heard more gunshots." Ms. Fruge was able to stop a passing vehicle and rode to a nearby store where she called authorities.

Corporal [Donald] Lindenman explained in his trial testimony that he ultimately transported Defendant to the hospital for collection of blood and urine. During that drive, Defendant stated to him that he and Mr. Fountain had argued, but that Ms. Fruge and Mr. Fountain had left the residence when he heard gunshots and, after going outside, he saw Mr. Fountain lying on the driveway. Defendant explained to Corporal Lindenman that he attempted to stop the bleeding from the "carotid artery" by applying pressure. However, the officer testified that Defendant had no blood on his hands or clothing.

While Defendant did not initially admit that he was the shooter, he admitted as such in a later interview, which was received into evidence and reviewed by the jury. During that interrogation, Defendant stated that during the argument, Mr. Fountain reached into a boat located outside the home, retrieving a paddle. Defendant explained that he was already armed with a gun at that time and that he shot three times.

*Id*. at 1-4 (footnotes omitted).

Following the shooting death of Michael Fountain, the State charged Defendant with second degree murder, a violation of La.R.S. 14:30.1. A jury rejected Defendant's claim of self-defense and unanimously convicted Defendant as charged.

On appeal, this court affirmed Defendant's conviction. This court additionally found the trial court referenced the applicable sentence but did not ultimately impose that sentence and remanded the matter to the trial court for imposition of sentence.

On July 8, 2019, the trial court sentenced Defendant to life imprisonment at hard labor without benefit of parole, probation, or suspension of sentence but then

reset the matter at defense counsel's request.[1] Defendant was again sentenced to serve life imprisonment at hard labor without benefit of probation, parole, or suspension of sentence on July 11, 2019. Defendant's Motion for Reconsideration of Sentence was denied. This appeal followed.

## ERRORS PATENT REVIEW

In accordance with La.Code Crim.P. art. 920, we review all appeals for errors patent on the face of the record. After reviewing the record, we find there are no errors patent; however, the minutes of sentencing need correction.

The minutes of sentencing indicate the trial court sentenced Defendant to "live" imprisonment rather than "life" imprisonment. To correct this typographical error, the trial court is ordered to amend the minutes of sentencing to accurately reflect the terms of Defendant's confinement, i.e., to serve "life" imprisonment.

## DISCUSSION

In his only assignment of error, Defendant contends a life sentence in this case is excessive based on both constitutional and statutory grounds. He alleges the trial court again failed to conduct a proper sentencing hearing, although it did impose a sentence this time. Thus, the trial court's sentence should be vacated, and the matter remanded for a new hearing.

In addressing the trial court's failure to impose sentence in *Coward*, this court stated:

> At the sentencing hearing, and after hearing argument regarding defense counsel's assertion that the mandatory life sentence was unconstitutionally excessive as applied to Defendant, the trial court stated:
>
> > [I]t should be noted that neither Defense or State has presented anything post-trial to the Court as it relates to any mitigating - - as Defense Counsel points out that the

---

[1] Court minutes for that date indicate the sentence was vacated, but the transcript of the proceeding does not.

3

> statute takes away the Court's discretion as it relates to this charge. And the Court - - I do want to note that Mr. Coward had no prior convictions in this matter to the extent to which that mitigates. And under Louisiana revised statute 1430.1 [sic], the punishment for second degree murder is life imprisonment and [sic] hard labor without the benefit of parole, probation, or suspension of sentence. Again, a jury of Mr. Coward's peers has made that determination.

The trial court then advised Defendant of the prescriptive period for filing post-conviction relief, and defense counsel renewed his previous objection to the excessiveness of the sentence as applied to Defendant. The transcript reveals no further statement regarding the sentence was made by the trial court.

> As the transcript shows, the trial court referenced the applicable sentence but did not ultimately impose that sentence. Accordingly, we remand this matter to the trial court for the imposition of sentence. This determination pretermits discussion of Defendant's second and third assignments of error which address sentencing issues. On remand, the trial court is reminded of the sentencing guidelines of La.Code Crim.P. art. 894.1 if a downward departure from the mandatory life sentence is again argued by Defendant. *See State v. Dorthey*, 623 So.2d 1276 (La.1993).

*Coward*, 18-951, p. 6 (alterations in original) (footnote omitted).

On remand, the parties made an appearance on the record on July 8, 2019, and the judge immediately stated:

> Let the Record reflect that Mr. Frin Wayne Coward is present, and let the Record reflect that on[] February 24, 2018[,] Frin Wayne Coward was found guilty of second degree murder by a jury of his peers. At this time, this Court will sentence the defendant to life imprisonment with hard labor without benefit of parole, probation, or suspension of sentence.

Thereafter, counsel for Defendant asserted he was not given an opportunity to address the court before the sentence was imposed. Counsel additionally asserted he had not received notice that the sentencing hearing had been set for that date. Counsel stated he would have argued for a downward departure from the mandatory sentence, but he was not sufficiently prepared. He then informed the court that Defendant was "an individual of advanced years," had no prior record, and would

4

"be better off in Angola State -- or any DOC facility even if he had a sentence of 99 years versus a sentence of life without parole." The State interrupted, insisting any argument toward downward departure was improper at that time, as the judge had just imposed sentence. Counsel for Defendant reiterated Defendant should not have been sentenced without counsel having the opportunity to speak. He pointed out that this court's opinion in *Coward* specifically referred to the prospect of a downward departure from the mandatory sentence being asserted by Defendant. He then moved to proceed with his argument for downward departure or to continue the proceedings due to the lack of notice. Counsel for Defendant further moved to "rescind the re-sentencing" and have the matter reset with proper notice given to him. The State did not think there was a requirement that Defendant be afforded an opportunity to re-urge any arguments. The trial court subsequently granted defense counsel's request to "be given an opportunity to review this and make a presentation to the Court" and reset the matter for July 11, 2019.

On July 11, 2019, the parties once again addressed this court's ruling in *Coward*. The State objected to the presentation of any evidence as to a downward departure. Defense counsel noted it was not his intent to present evidence, as that had previously been done. He went on to remind the trial court that this court "explicitly said" that if Defendant argued for a downward departure, the trial court needed to consider the factors set forth in La.Code Crim.P. art. 894.1. The trial court followed with:

> I want the record to reflect that on February 24th, 2018, Frin Wayne Coward was found guilty of second-degree murder by a jury of his peers. After consideration of 894.1 and the statutes dealing with this matter, this Court is going to sentence the defendant to life imprisonment at hard labor without benefit of probation, parole, or suspension of sentences [sic] . . . .

Defense counsel objected to the sentence.

5

Defendant filed a Motion to Reconsider Sentence. In the first paragraph of his motion, Defendant alleged his sentence violated the proportionality doctrine under *State v. Dorthey*, 623 So.2d 1276 (La.1993), and "progeny pertaining to the power of the sentencing courts to determine whether a sentence in a particular case, with particular facts, would be unconstitutional if a general sentence scheme is utilized, and whether a downward deviation from statutory minimum sentencing is warranted." Next, Defendant asserted the trial court failed to give consideration or weight to mitigating factors, including those set forth in La.Code Crim.P. art. 894.1 and particularly the uncertainties in the evidence and proof of what precisely occurred at the time the offense was committed, the fact that he was physically confronted by a much larger and younger man at his home, his legal possession of a firearm at his home, his advanced age and poor health, the length of the sentence, and the conditions of life without parole imprisonment in the Louisiana Department of Corrections. Defendant further argued his sentence was constitutionally excessive. The motion was denied without a hearing.

In brief to this court, Defendant maintains the record does not reflect the trial court vacated the sentence it imposed on July 8. Thus, it is unclear if the hearing held on July 11 was done with proper authority because a motion to reconsider sentence had not been filed yet. Defendant goes on to address errors in each sentencing hearing conducted by the trial court after remand. Defendant argues the trial court erred in the first sentencing hearing by failing to entertain any arguments involving whether a life sentence was constitutional or whether a downward departure was justified in this case. Defendant notes this argument assumes this court will find the first sentencing hearing was the only valid sentencing hearing.

Defendant next asserts that at the second hearing, the trial court again failed to articulate a sufficient factual basis to justify a life sentence. In this argument,

6

Defendant assumes this court will find the second sentencing hearing nullified the trial court's ruling in the first sentencing hearing. Defendant notes that at the second hearing, the trial court did not state for the record pursuant to La.Code Crim.P. art. 894.1 what sentencing factors it considered and discuss the facts of the case, including his age, the age of the victim, that the offense occurred at the Defendant's home where the victim was allowed to stay despite his drug use, that the shooting was provoked, his lack of prior convictions, and testimony that the victim was in a boxer stance just prior to the shooting. Because none of these facts were mentioned at the second hearing, Defendant alleges there is nothing for this court to review to determine if the trial court abused its sentencing discretion.

Defendant next addresses his Motion to Reconsider Sentence. Defendant claims that therein defense counsel specifically raised "*Dorthey* relief" and the trial court's failure to give consideration or weight to mitigating factors. Defendant claims, if the second sentencing was valid, the trial court erred in not granting the Motion to Reconsider Sentence and in not holding a hearing to consider "*Dorthey* relief." Defendant asserts the trial court never considered whether a downward departure was warranted in this case. Therefore, the matter should be remanded to the trial court for consideration of arguments regarding whether a life sentence is constitutional. Defendant alternatively asserts that, if the trial court followed the proper procedures, the facts of the case prove, per *Dorthey*, that a life sentence is constitutionally excessive. Thus, the sentence should be vacated, and the matter remanded for a hearing consistent with "*Dorthey* relief."

The first sentencing hearing was reset to a later date at the request of defense counsel. Thus, the second sentencing proceeding was a continuation of the first hearing and we have not considered Defendant's claims relating to the first hearing. We now address the sentence imposed.

In *State v. Francois*, 17-471, pp. 20-22 (La.App. 5 Cir. 3/14/18), 242 So.3d 806, 819-20, *writ denied*, 18-530 (La. 2/11/19), 263 So.3d 888, the fifth circuit stated:

The Eighth Amendment to the United States Constitution and Article I, § 20 of the Louisiana Constitution prohibit the imposition of excessive punishment. Although a sentence is within statutory limits, it can be reviewed for constitutional excessiveness. *State v. Smith*, 01-2574 (La. 1/14/03), 839 So.2d 1, 4. A sentence is considered excessive if it is grossly disproportionate to the offense or imposes needless and purposeless pain and suffering. *Id.* A sentence is grossly disproportionate if, when the crime and punishment are considered in light of the harm done to society, it shocks the sense of justice. *State v. Lawson*, 04-334 (La. App. 5 Cir. 9/28/04), 885 So.2d 618, 622, *writ denied*, 05-0244 (La. 12/9/05), 916 So.2d 1048. The appellate court shall not set aside a sentence for excessiveness if the record supports the sentence imposed. *State v. Pearson*, 07-332 (La. App. 5 Cir. 12/27/07), 975 So.2d 646, 656.

The penalty for second degree murder is life imprisonment at hard labor, without benefit of parole, probation, or suspension of sentence. La. R.S. 14.30.1. A mandatory minimum sentence is presumed constitutional. *State v. Royal*, 03-439 (La. App. 5 Cir. 9/30/03), 857 So.2d 1167, 1174, *writ denied*, 03-3172 (La. 3/19/04), 869 So.2d 849. Further, Louisiana courts have consistently held that a mandatory sentence of life imprisonment for second degree murder does not constitute cruel and unusual punishment. *State v. Graham*, 422 So.2d 123 (La. 1982); *State v. Lovick*, 00-1833 (La. App. 5 Cir. 5/16/01), 788 So.2d 565, 573, *writ denied*, 01-1836 (La. 5/10/02), 815 So.2d 833.

In [*State v.*] *Dorthey*, [623 So.2d 1276 (La.1993)], the Louisiana Supreme Court recognized that a mandatory minimum sentence under the Habitual Offender Law may still be reviewed for constitutional excessiveness. In *State v. Johnson*, 97-1906 (La. 3/4/98), 709 So.2d 672, 676, the Louisiana Supreme Court reexamined *Dorthey* and outlined the criteria a defendant must meet in order to show that a mandatory minimum sentence under the Habitual Offender Law is constitutionally excessive. Although *Dorthey* involved a mandatory enhanced sentence, this Court has applied the principles set out in *Dorthey* to the review of mandatory life sentences other than those imposed under the Habitual Offender Law. *See State v. Temple*, 01-655 (La. App. 5 Cir. 12/12/01), 806 So.2d 697, 707, *writ denied*, 02-234 (La. 1/31/03), 836 So.2d 58.

In order to rebut the presumption that a mandatory minimum sentence is constitutional, the defendant must clearly and convincingly show that he is "exceptional, which . . . means that because of unusual circumstances this defendant is a victim of the legislature's failure to

assign sentences that are meaningfully tailored to the culpability of the offender, the gravity of the offense and the circumstances of the case." *Johnson*, 709 So.2d at 676. A sentencing court should exercise its authority to declare excessive a mandatory minimum sentence only under rare circumstances. *State v. Lindsey*, 99-3256 c/w 99-3302 (La. 10/17/00), 770 So.2d 339, 345.

Defendant was convicted of second degree murder, which carries a mandatory penalty of life imprisonment. La.R.S. 14:30.1(B). He alleges the trial court did not set forth a sufficient factual basis to justify imposition of that sentence. Although the trial court mentioned La.Code Crim.P. art. 894.1 at the second sentencing hearing, it did not state which factors it considered in formulating the sentence imposed. "[F]ailing to articulate reasons for sentence under [La.Code Crim.P.] art. 894.1 when imposing a mandatory life sentence is not error. In such circumstances, setting forth the factors considered in imposing sentence would be an exercise in futility since the court has no discretion." *State v. Clem*, 33,686, p. 12 (La.App. 2 Cir. 11/1/00), 779 So.2d 763, 770, *writ denied*, 00-3498 (La. 10/5/01), 798 So.2d 964.

The supreme court and this court have previously held the mandatory life sentence for second degree murder is not unconstitutionally excessive. *See State v. Parker*, 416 So.2d 545, 552 (La.1982); *State v. Cofer*, 16-871 (La.App. 3 Cir. 4/5/17), 216 So.3d 313, *writ denied*, 17-1150 (La. 5/11/18), 241 So.3d 1014; *State v. Chehardy*, 12-1337 (La.App. 3 Cir. 5/1/13), 157 So.3d 21; *State v. Boyer*, 10-693 (La.App. 3 Cir. 2/2/11), 56 So.3d 1119, *writ denied*, 11-769 (La. 1/20/12), 78 So.3d 138[2]; *State v. Adams*, 04-77 (La.App. 3 Cir. 9/29/04), 884 So.2d 694, *writ denied*, 04-2709 (La. 2/25/05), 894 So.2d 1131, *and writ denied*, 04-2880 (La. 2/25/05), 894 So.2d 1132. In *State v. Dunnagan*, 16-187 (La.App. 1

---

[2]Certiorari granted in this matter was dismissed as improvidently granted. *See Boyer v. Louisiana*, 569 U.S. 238, 133 S.Ct. 1702 (2013).

9

Cir. 9/20/16), 277 So.3d 378, the first circuit found a life sentence for a sixty-eight-year-old first offender convicted of second degree murder was not excessive. Defendant herein gave his date of birth during his interview with police and was seventy years old at the time of the offense. He was also a first offender. In light of the facts of the offense and the above-cited cases, we find the trial court did not abuse its discretion when imposing the maximum sentence. Thus, Defendant's sentence is not excessive.

We next address Defendant's request for a downward departure from the mandatory sentence. Downward departure from the mandatory sentence was mentioned at both the first and second sentencing hearings held on remand. At the first sentencing hearing, defense counsel noted his intent to argue for a downward departure, and his preference to do so by written memorandum.[3] He then briefly discussed Defendant. The matter was continued to July 11 so that defense counsel could review the matter and make a presentation to the trial court.

Defense counsel addressed the issue at the second hearing, stating:

My understanding, Your Honor, is that we argued it previously. It was not my intention to present evidence. Now, we're kind of remote from the trial date, here, but at least, Your Honor and I were here, and Mr. Coward was here. . . . But such record -- as an evidentiary record was made at that time, we just wanted to point out that the argument was made about -- that would involve *State v. Dorthey*.

Because defense counsel suggested the request for downward departure had previously been addressed, this court reviewed the initial sentencing hearing held on May 18, 2018. There, defense counsel objected to the statutorily mandated sentence, stating it was "constitutionally excessive as applied to an elderly first offender" such as Defendant. Defense counsel explained his objection:

It's made pursuant to the eighth and fourteenth amendments of the federal constitution because it is a federal oral objection, alone, at this

_____

[3]No written memorandum addressing the issue is included in the record.

time is sufficient to preserve it for federal purposes notwithstanding any state, statutory, or jurisprudential law to the contrary, because the defendant has a federal due process right to make out his defenses at every stage of the proceedings.

Defendant himself subsequently addressed the court:

First of all, it was a very unfortunate set of circumstances that created the day that the gentleman decided to take my life, and I used what force I had, and seemed correct to deter him from moving forward towards me.

Since all of this happened as a result of him being loaded with narcotics and medicines and alcohol, which was not brought up in court, he was agitated with an argument with his girlfriend. I knew both of the people. I had given him a home. I had just helped him bury his mother four days before. I bonded him out of jail three months before then. I was trying to help the boy. He turned on me. It didn't get spoken in court, I didn't get a chance to say it, Your Honor. Yes, I am remorseful. I knew him since he was a young man. I knew his grandfather well, I know his family. At one time I was married to his half-sister. Yes, I do have remorse about that. But at the time, in that particular set of circumstances, Your Honor, he growled and said, "Oh, man, I'm going to beat you to death." Now, that made the hair on the back of my head stand up. I didn't get a chance to say this in court. And you know and I know the reason why. I'm not going to go into the reason for that, but yes, I would have chosen a different direction of defense for me if given the opportunity.

I do have remorse for the fact that the man died. I did not shoot him to take his life. The first shot was below the waist on the leg, the second shot was at the waist, and if he hadn't been swinging that boat paddle at me at the time his head would not have been down when the third shot hit him in the neck. I'm sorry that it - - I pray to my Lord, and He's forgiven me. Now it's time for man to forgive me.

After hearing from Defendant and the arguments of counsel, the trial court set forth the applicable penalty. Defense counsel then renewed his objection to the life sentence.

We note Defendant alleged a life sentence was excessive at the hearing held on May 18, 2018, but never moved for a downward departure from the mandatory sentence at the hearing or put on evidence that he was exceptional. Thus, the issue was first raised by Defendant on appeal. *Coward* 18-951, p. 4.

On July 8, defense counsel mentioned Defendant's age and status as a first offender. The matter was then continued to July 11 to give Defendant a chance to present evidence in support of his request for a downward departure. Defense counsel chose not to present any evidence on that date. He subsequently raised the issue in his Motion to Reconsider Sentence but merely cited to La.Code Crim.P. art. 894.1 and several mitigating factors he thought the trial court should consider. On appeal, counsel asks for the matter to be remanded for a hearing on the Motion to Reconsider so that evidence regarding a downward departure may be submitted.

Appellate courts have remanded for consideration of requests for downward departure when a trial court does not consider a request because of an erroneous view that it is without authority to consider such. *See State v. Small*, 13-1334, (La.App. 4 Cir. 8/27/14), 147 So.3d 1274, *writ denied*, 14-1930 (La. 4/24/15), 169 So.3d 354. In *State v. Pernell*, 14-678, pp. 5-6 (La.App. 4 Cir. 10/15/14), 151 So.3d 940, 945 (footnote omitted), the fourth circuit discussed evidentiary hearings on motions for downward departure:

> "The importance of a full evidentiary hearing in the district court on a claim of excessiveness can hardly be overstated." [*State v. Conner*], 09-1023, p. 5 [(La.App. 4 Cir. 2/3/10)]; 30 So.3d [1132] at 1135 n. 4. "The only opportunity for review of the sentencing decision is on direct appeal as there is no post-conviction review available on such claim." *Id.* (citing *State ex rel. Melinie v. State*, 93-1380 (La.1/12/96); 665 So.2d 1172 (*per curiam* )). "Moreover, . . . there is no post-conviction review available for ineffective assistance of counsel at sentencing claims." *Id.* (citing *State v. Thomas*, 08-2912 La.10/16/09); 19 So.3d 466). Thus, as all other avenues of review are unavailable, a sentencing judge should permit a defendant to introduce evidence and substantiate his claim at the hearing on the motion, because, in the absence of evidence, there is nothing for this Court to review on appeal. *See id.*, 09-1023, p. 5; 30 So.3d at 1135 (citing *State v. Allen*, 09-0813, p. 6 (La.App. 4 Cir. 1/13/10); 30 So.3d 1024, 1027).

> Here, the sentencing judge was tasked "to explicitly determine whether the defendant's situation is one of those rare and exceptional circumstances that would justify a downward departure from the legislatively mandated and presumptively constitutional sentence of life imprisonment at hard labor without the benefit of parole, probation,

> or suspension of sentence." [*State v.*] *Pernell*, 13-0180, p. 16 [(La.App. 4 Cir. 10/2/13)]; 127 So.3d [18] at 30. Rather than permitting Mr. Pernell to rebut this presumption by introducing evidence and adducing testimony, which Mr. Pernell's counsel indicated he was prepared to do, the sentencing judge summarily denied the motion to reconsider. As such, the sentencing judge failed to comply with our remand instructions that an evidentiary hearing be conducted on Mr. Pernell's motion.

The case at bar is distinguishable from these cases. This court did not order an evidentiary hearing regarding the request for downward departure be held on remand. Additionally, unlike the defendant in *Pernell*, Defendant herein was given the opportunity to present evidence as to a downward departure on July 11, and defense counsel did not take advantage of that occasion even though the matter was reset for that date at his request so he could prepare to address the issue. Defendant has not alleged that defense counsel was ineffective for his failure to address the issue on July 11. We, therefore, decline to afford Defendant a third opportunity to present evidence. Moreover, the trial court has made three attempts to impose a life sentence, and it is clear that is the sentence it intends Defendant to serve.

In *State v. Lambert*, 18-777, 18-1024 (La.App. 4 Cir. 3/27/19), 267 So.3d 648, *writ denied*, 19-736 (La. 1/22/20), --- So.3d ---, the defendant, who had been convicted of aggravated rape and sentenced to life imprisonment, argued for a downward departure due to his advanced age of sixty-five at the time of resentencing and the fact that his previous convictions were for non-violent crimes should be taken into consideration. The fourth circuit noted it had "consistently refused to consider a defendant's age and first-offender status as exceptional circumstances when the crime committed is violent in nature." *Id.* at 654. *See also State v. Funes*, 11-120 (La.App. 5 Cir. 12/28/11), 88 So.3d 490, *writ denied*, 12-290 (La. 5/25/12), 90 So.3d 408. Second degree murder is a crime of violence, and Defendant herein shot the victim three times. *See* La.R.S. 14:2(B)(3).

Defendant does not cite a single case where a mandatory life sentence imposed on a defendant convicted of second degree murder was found to be unconstitutionally excessive on appellate review. Moreover, he does not present any convincing evidence to support a downward departure from the mandatory life sentence.

We note the Motion to Reconsider Sentence failed to set forth any evidence or argument that would support a finding that Defendant is exceptional. Thus, we find the trial court did not abuse its discretion in denying the motion. Louisiana Code of Criminal Procedure Article 881.1(D) provides:

> The trial court may deny a motion to reconsider sentence without a hearing, but may not grant a motion to reconsider without a contradictory hearing. If the court denies the motion without a hearing, the party who made or filed the motion may proffer the evidence it would have offered in support of the motion.

Because the trial court denied Defendant's motion, it was not required to hold a hearing thereon. *See State v. Miller*, 52,211 (La.App. 2 Cir. 8/15/18), 254 So.3d 23.

For the foregoing reasons, Defendant's sentence is affirmed.

## DECREE

Defendant's sentence is affirmed. We order the trial court to correct the sentencing minutes to accurately reflect the imposition of "life" imprisonment rather than "live" imprisonment.

**AFFIRMED AND REMANDED WITH INSTRUCTIONS.**

14

STATE OF LOUISIANA

COURT OF APPEAL, THIRD CIRCUIT

NUMBER 19-869

STATE OF LOUISIANA

VERSUS

FRIN WAYNE COWARD

Conery, J., dissenting.

I disagree with the majority opinion and would remand yet again for re-sentencing.

As noted by the majority, this court on initial review affirmed Defendant's conviction, but remanded the case for sentencing, finding that while the trial judge had referenced the legislatively mandated life sentence for second degree murder, he had not actually imposed a sentence. *See State v. Coward*, 18-951 (La.App. 3 Cir. 6/5/19) (2019 WL 2366740).

The majority notes that the supreme court and our court have consistently held that the mandatory life sentence for second degree murder is not unconstitutionally excessive. Yet the jurisprudence is also clear that:

> [E]ven when a sentence falls within the statutory sentencing range, it still may be unconstitutionally excessive, and in determining whether a sentence shocks the sense of justice or makes no meaningful contribution to acceptable penal goals, this court has suggested that several factors may be considered:
>
>> [An] appellate court may consider several factors including the nature of the offense, the circumstances of the offender, the legislative purpose behind the punishment and a comparison of the sentences imposed for similar crimes. *State v. Smith*, 99–0606 (La.7/6/00); 766 So.2d 501. While a comparison of sentences imposed for similar crimes may provide some insight, "it is well settled that sentences must be individualized to the

> particular offender and to the particular offense committed."
> *State v. Batiste*, 594 So.2d 1 (La.App. 1 Cir.1991).
> Additionally, it is within the purview of the trial court to
> particularize the sentence because the trial judge "remains in
> the best position to assess the aggravating and mitigating
> circumstances presented by each case." *State v. Cook*, 95–2784
> (La.5/31/96); 674 So.2d 957, 958.

*State v. Decuir*, 10-1112, pp. 12-13 (La.App. 3 Cir. 4/6/11), 61 So.3d 782, 791

(citing *State v. Smith*, 02–719, p. 4 (La.App. 3 Cir. 2/12/03), 846 So.2d 786, 789,

*writ denied*, 03–562 (La. 5/30/03), 845 So.2d 1061).

It is also clear that while sentencing discretion may generally be limited by

the legislatively mandated sentence, trial courts must always make certain a

particular sentence is constitutional when applied to an individual defendant.  *See*

*State v. Dorthey*, 623 So.2d 1276 (La.1993).  *See also State v. Green*, 16-107 (La.

6/29/17), 225 So.3d 1033, *cert. denied*, 138 S.Ct. 459 (2017); *State v. Mosby*, 14-

2704 (La. 11/20/15), 180 So.3d 1274; *State v. Celestine*, 19-43 (La.App. 3 Cir.

10/2/19), 281 So.3d 14; *State v. Kight*, 18-974 (La.App. 3 Cir. 6/5/19), 275 So.3d

26, *writ denied*, 19-1226 (La. 10/8/09), 280 So.3d 591.

On remand at the first "re-sentencing hearing" on July 8, 2019, the trial

judge, without giving Defendant an opportunity to speak, immediately sentenced

Defendant to the legislatively mandated life imprisonment for second degree

murder.  Defense counsel immediately objected, noting that he did not receive

proper notice of the sentencing nor had he been given an opportunity to present

evidence in support of a request for a "downward departure" pursuant to *State v.*

*Dorthey*.  Over the State's objection, the trial court noted that proper notice of the

July 8 sentencing hearing was not of record and granted defense counsel's motion

to continue.  The trial judge then re-set sentencing for July 11, 2019, just three

2

days later. No evidence was presented by defense counsel at the July 8 sentencing hearing in support of a request for downward departure due to lack of notice.

At the July 11 sentencing hearing, the "second re-sentencing hearing," defense counsel again offered no evidence in support of a downward departure. Nevertheless, on original remand, the previous panel reminded the trial judge to consider the sentencing factors contained in La.Code Crim.P. art. 894.1 and make findings in accordance with the sentencing guidelines contained therein if a downward departure was argued by Defendant pursuant to *State v. Dorthey*. Even though defense counsel did not offer any additional evidence at the second sentencing hearing, the trial judge had heard the evidence presented at trial. In brief, appellate counsel correctly argues that the evidence presented at trial included the following mitigating factors that should have been considered pursuant to La.Code Crim.P. art. 894.1.

1. Defendant's advanced age (over 70 at the time of the offense), the victim was younger (age 56).

2. The shooting took place at Defendant's home after the victim, who had been allowed to stay at Defendant's home for some time, refused to leave pursuant to Defendant's repeated demands.

3. The victim was on drugs and had exhibited hostile and aggressive behavior toward Defendant.

4. The shooting was provoked by the victim, who was approaching Defendant aggressively at the time of the shooting. According to information Defendant gave to the investigating officers, the victim had threatened to beat Defendant to death.

5. According to a witness at trial, the victim was in a "boxer stance" while confronting Defendant.

6. The victim had violent tendencies, and a witness (Jason Coward) testified that he heard a voice indicating that the victim threatened to beat Defendant to death.

3

7. The trial court acknowledged that Defendant was a first offender.

8. As the majority acknowledged, there was no suggestion that this was a pre-meditated murder. Rather, it appeared to be due to provocation, albeit the jury felt it did not warrant acquittal.

The majority noted in its reasoning that this court in the first criminal appeal did not specifically order the defense to present additional evidence or order an evidentiary hearing regarding defense counsel's request for a downward departure pursuant to *State v. Dorthey*. *See State v. Coward*, 18-951 (2019 WL 2366740). While technically correct, we did "remind" the trial court of the sentencing guidelines of La.Code Crim.P. art. 894.1 if a downward departure from the mandatory life sentence was again argued by Defendant. Defense counsel did "argue" for a downward departure, but did not present any **additional** evidence. Defendant, for whatever reason, was not allowed to address the court on his own behalf. Prior to re-sentencing on July 11, the words, "Does the defendant have anything to say before sentencing" were not pronounced.

As noted above, there was mitigation evidence in the trial record upon which the trial judge may have appropriately made factual findings pursuant to La.Code Crim.P. art. 894.1 that may have justified a downward departure from the "mandatory" life sentence imposed by the trial judge. Under the peculiar circumstances of this case, I am constrained to agree with Defendant's appellate counsel that the trial judge had to do more than simply issue a *talismanic incantation* that "[a]fter consideration of 894.1 and the statutes dealing with this matter, this Court is going to sentence the defendant to life imprisonment at hard labor[.]" In my view, what is expected and required is a thorough and thoughtful review of the evidence in the record as may pertain to the legislatively mandated

4

sentencing factors in Article 894.1, plus an articulation of factual findings and reasoning as to those factors that may be applicable in the particular case at issue. Defendant should be allowed to testify and/or speak on his own behalf and put on additional mitigation evidence if he so chooses.

Further, it is my belief that failing to order a remand for a full evidentiary hearing on the issue of sentencing with an order that the trial judge articulate specific factual findings and reasons consistent with La.Code Crim.P. art. 894.1 may result in post-conviction proceeding claims of ineffective assistance of counsel, possibly resulting in even more delays before a final decision is rendered. I would also note at this juncture that Defendant may be precluded from raising sentencing issues in a future application for post-conviction relief. In *State v. Thomas*, 08-2912 (La. 10/16/09), 19 So.3d 466, the supreme court stated: "[R]elator's claims that the court imposed an excessive sentence and that he received ineffective assistance of counsel at sentencing are not cognizable on collateral review pursuant to La.C.Cr.P. art. 930.3 and *State ex rel. Melinie v. State*, 93-1380 (La.1/12/96), 665 So.2d 1172." However, in *State v. Harris*, 18-1012, the supreme court is presently considering the issue of whether *Melinie* was correctly decided and whether a claim of ineffective assistance of counsel related to sentencing is cognizable by application for post-conviction relief, motion to correct illegal sentence, or by any other means. That decision remains pending at the time of this writing. In the interest of judicial economy, a remand now is particularly warranted.

CONCLUSION

I would order a remand for re-sentencing, this time with more specific directions to the trial judge to consider the sentencing guidelines in La.Code Civ.P.

5

art. 894.1 and make factual findings based on all the evidence in the record, plus any additional evidence that may be presented on remand. Defendant should be given an opportunity to testify or to speak before sentencing. Notification to the victim's family must be given pursuant to La.R.S. 46:1844. *See also* La.Const. art. 1, § 25.