NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

CA 19-505

JERRY L. MALLET & GAIL A. MALLET

VERSUS

KATHY MALLET MONTGOMERY

**********

APPEAL FROM THE
THIRTY-FIRST JUDICIAL DISTRICT COURT
PARISH OF JEFFERSON DAVIS, NO. C-423-08
HONORABLE STEVE GUNNELL, DISTRICT JUDGE

**********

ELIZABETH A. PICKETT
JUDGE

**********

Court composed of Sylvia R. Cooks, Elizabeth A. Pickett, and Jonathan W. Perry, Judges.

Cooks, J., dissents and assigns written reasons.

AFFIRMED.

**Jerry L. Mallet**
**Attorney at Law**
**1030 Lafayette Street**
**Lafayette, LA 70501**
**(337) 593-0910**
**COUNSEL FOR PLAINTIFF/APPELLANT:**
    **Gail A. Mallet**


**David E. Marcantel**
**Marcantel, Marcantel, Wall & Pfeiffer**
**302 E. Nezpique Street**
**Jennings, LA 70546**
**(337) 824-7380**
**COUNSEL FOR DEFENDANT/APPELLEE:**
    **Kathy Mallet Montgomery**

**PICKETT, Judge.**

Plaintiff appeals the trial court's ruling that excluded two of her witnesses from testifying and its determination that she failed to prove her claim for personal injuries. We affirm.

## FACTS

On Mother's Day, May 13, 2007, members of the Robert and Mildred Mallet family of Welsh gathered to visit Mildred Mallet, their mother/mother-in-law/grandmother. At issue herein is an incident that occurred after Mildred's son, Jerry, and his wife, Gail; son, Craig; and daughter, Millie; arrived at the Mallet home. The incident occurred between Gail and Jerry's sister, Kathy Mallet Montgomery. Gail contends that Kathy strangled and injured her. Kathy denies that she touched Gail.

On January 23, 2019, the matter was tried before the trial court.[1] Prior to the presentation of evidence, the trial court sequestered all the witnesses. Gail, Craig, and Glenn Sensat, the Mallets' cousin, were the first witnesses to testify. After they testified, the trial court took a break to handle another matter. Before the trial resumed, a court employee reported to the trial court that during the break, she had seen and heard Craig, Jerry, and Millie discussing a complaint by Craig that the trial court had reprimanded him. The trial court held a hearing to address the report. At the conclusion of the hearing, the trial court disqualified Jerry and Millie from testifying on Gail's behalf.

The trial resumed. Gail presented the testimony of her treating chiropractor and proffered the testimony of Jerry and Millie regarding the facts surrounding the

---

[1] Jerry and Gail initially filed suit against Kathy; however, Jerry dismissed his claim before trial.

incident and Gail's injuries. Kathy presented her testimony, the testimony of her brothers, Bob and Rick, and her mother. To a point, witness's accounts of what occurred between the women are very similar; thereafter, they differ dramatically.

When the trial concluded, the trial court allowed the parties time to file post-trial briefs. On March 11, 2019, the trial court issued written Reasons for Ruling in which it concluded that Gail had not satisfied her burden of proving her claim against Kathy. The trial court signed a judgment dismissing Gail's claims'; Gail appealed.

## ASSIGNMENTS OF ERROR

Gail assigns the following errors with the trial court's rulings, findings of fact, and judgment:

1. The Trial Court erred in disqualifying Jerry L. Mallet and Millie Mallet from testifying as witnesses at trial.

2. The Trial Court erred by basing its ruling, to a significant extent, on the misconception that Gail Mallet, Kathy Montgomery[,] and Mildred Mallet were "the only witnesses at trial that were actually in the room when the incident happened."

3. The Trial Court erred by failing to take into consideration the undisputed medical testimony which confirmed that Gail Mallet suffered injuries consistent with her account of the choking incident alleged perpetrated by Kathy Montgomery, that the injuries occurred at a time consistent with the date of the alleged choking and that there was no evidence presented at trial of any other instance or occurrence (other than the choking incident at issue herein) which could explain and/or account for the injuries suffered by [Gail].

4. The trial court erred in finding that [Gail Mallet] failed to meet her burden of proving by a preponderance of the evidence that [Kathy Montgomery] choked [Gail Mallet].

DISCUSSION

*Sequestration*

Louisiana Code of Evidence Article 615(A) provides for sequestering witnesses and excluding them from the courtroom so they cannot see or hear the proceedings and ordering them not to discuss "the facts of the case with anyone other than counsel in the case." If the sequestration order is violated, the "court may impose appropriate sanctions for violations of its exclusion order including contempt, appropriate instructions to the jury, or when such sanctions are insufficient, disqualification of the witness." La.Code Evid. Art. 615(C).

Comment (f) to La.Code Evid. Art. 615 (emphasis added) addresses the remedy of disqualification, stating:

> (f) Disqualification[] is the most drastic remedy. It precludes a party from adducing perhaps vital evidence and *deprives the jury* of the benefit of the witness' testimony. When a party has had no knowledge of the violation and has played no role in bringing it about, disqualification unjustly impairs his case.

Sequestration of witnesses serves the dual purpose of preventing witnesses from being influenced by prior testimony and strengthening the role of cross-examination. *State v. Ardoin*, 340 So.2d 1362 (La.1976); *State v. McDaniel*, 340 So.2d 242 (La.1976). "The particular remedy imposed for sequestration violations rests within the sound discretion of the trial court." *Trejo v. Canaan Constr., LLC*, 52,697, p. 25 (La.App. 2 Cir. 6/26/19), 277 So.3d 499, 515.

The trial court conducted a hearing to address the reported sequestration violation and questioned the court employee; Craig and Glenn, who had already testified; and Jerry and Millie, who were waiting to testify. The employee testified that she heard Jerry state, "Oh no . . . he should have objected to that[,]" and "There is no way he can say that. He should have objected." Craig, Glenn, Jerry,

and Millie testified that when Craig left the courtroom, he stated he was aggravated because the trial court reprimanded him when he was testifying and that Jerry told Craig he needed to stay calm and not get rattled. They all denied that Jerry made a comment similar to "he should have objected to that."

When the trial court asked why he violated the sequestration instruction, Craig stated: "I clearly misunderstood." When asked if he commented on Gail's attorneys' failure to object, Jerry testified, "I don't know if I asked him if the attorney objected or not. I don't -- I don't -- I don't know. I can't say for sure I didn't, but I didn't tell him he should have." After hearing the testimony of these witnesses, the trial court determined:

> I have to give credence to . . . a third party who does not have any interest in this case . . . . I gave them the opportunity to explain the comment that she overheard . . . and all of them denied it . . . . So the only appropriate remedy is Jerry and Millie will not be allowed to testify[.]
>
> . . . .
>
> . . . if all three of them would have come in here and said, yes . . . he should have objected to him smearing. Yeah, my dad said he you know, the attorney should have objected. If all three of them would have said that, it would be fine, but . . . all three of them denied it[.]

The trial court had the option of holding Jerry and Millie in contempt or disqualifying them.[2]

Gail argues that the trial court abused its discretion in refusing to allow Jerry and Millie to testify. The trial court's discussion at the conclusion of the sequestration violation hearing clearly shows that it did not believe Jerry, Millie, Craig, and Glenn's testimony on that issue. As the trier of fact, the trial court was the sole judge of the credibility of all the witnesses at trial. Therefore, the trial

---

[2] The third option provided by Article 615(C), giving instructions to the jury, does not apply here because the trial court was the trier of fact.

court's refusal to allow Jerry and Millie to testify had the same effect as allowing them to testify but discrediting their testimony based on its conclusion that they did not testify truthfully about the sequestration violation.

Under these facts, we find the trial court did not abuse its discretion in disqualifying Jerry and Millie from testifying.

*Liability*

Gail has the burden of proving her claim that Kathy caused her physical injury. La.Civ.Code art. 2315; *Guilbeau v. Liberty Mut. Fire Ins. Co.*, 18-230, 18-231, 18-232 (La.App. 3 Cir. 3/7/19), 269 So.3d 1002. To satisfy her burden, she must prove that Kathy engaged in negligent conduct that caused her physical injury and actual damages. *Id.* The trial court concluded that Gail failed to carry her burden of proof.

We review the trial court's findings of fact to determine whether they constitute "manifest error" or if they are "clearly wrong." *Rosell v. ESCO*, 549 So.2d 840, 844 (La.1989). We cannot reverse the trial court's findings of fact unless they are manifestly erroneous or clearly wrong. *Id.* "[W]here there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable." *Id.* Additionally, if the trial court's findings are "based on its decision to credit the testimony of one of two or more witnesses, [its findings] can virtually never be manifestly erroneous or clearly wrong." *Id.* at 845. Moreover, when the trial court's findings are based on credibility determinations, we must give great deference to the findings because "only the factfinder can be aware of the

5

variations in demeanor and tone of voice that bear so heavily on the listener's understanding and belief in what is said." *Id*. at 844.

The evidence shows that when Jerry and his family arrived, Mildred, Robert, Kathy, and Glenn were present. Shortly thereafter, Jerry's brother, Bob, arrived. Immediately before the incident occurred, Jerry, Robert, Craig, and Bob were in the living room; Mildred, Kathy, Gail, Millie, and Glenn were in the adjacent dining room/kitchen area. Craig entered the dining room/kitchen area, and Mildred asked Kathy, if she had noticed how muscular Craig had become. Kathy responded that that she had not noticed. Gail testified that she stated, "you haven't noticed much of anything, have you, Kathy, lately." According to Kathy, however, Gail stated: "You haven't noticed much. You didn't even speak to me, you little b----."

Gail presented her testimony, and the testimony of Craig, Glenn, and Dr. Paul Roger, her chiropractor, to prove that Kathy injured her. Gail, Craig, and Glenn testified that Kathy got out of her chair; followed Gail, who was walking toward the kitchen area; put her hands on Gail's neck; and choked her. They further testified that Kathy did not remove her hands from Gail's neck and quit choking Gail until Bob pulled Kathy's hands from Gail's neck and pulled Kathy from Gail.

Dr. Paul Roger testified that he began treating Gail approximately ten years before the incident, after she was injured in an automobile accident. Gail continued treating with Dr. Roger after that accident and was receiving maintenance treatment from him at the time of the incident. Dr. Roger testified that prior to the incident, Gail saw him for treatment about seven times a year, which equates to approximately once every seven and one-half weeks. Gail had

seen Dr. Roger on March 13, 2007. At that time, Dr. Roger testified that Gail rated her pain complaints very low on that date but complained of much more severe pain when she saw him after the incident on June 29, 2007. Gail reported to Dr. Roger that her pain after the incident prevented her from attending scheduled appointments with him.

Mothers' Day was just over eight weeks after Gail's March 13 visit. Gail testified that she began having neck pain the day the incident occurred and traveled to the Welsh police department three weeks later to report the incident. She did not seek medical treatment for the severe pain that she reported to Dr. Roger, however, until seven weeks after the incident.

Kathy defended Gail's claims with her testimony and the testimony of her mother and her brothers, Bob and Rick. Kathy, Mildred, and Bob testified that Kathy never put her hands on Gail. Kathy explained that she extended her hands on either side of Gail's head to try and redirect Gail's focus. Kathy further stated that when she put her hands by Gail's head, Mildred came up between her and Gail and slapped Gail. According to Kathy, Bob put his hands on her arms and told her, "don't do anything, if you do, I'll have to get involved," and she put her hands down.

Bob testified that Kathy did not have her hands on Gail's neck and that he told Kathy to put her arms/hands down to avoid an escalation of the situation, and Kathy obeyed. Mildred also testified that Kathy did not touch Gail, explaining that Kathy extended her hands but never touched Gail. Mildred further explained that she put her hand up and slapped Gail's face to make her stop saying "you damn little b----."

7

Kathy, Mildred, Bob, and Rick[3] testified that after the incident, Glenn frequently discussed the incident and stated that Kathy had not touched Gail. According to these witnesses, Glenn's continued discussions about the incident upset Mildred, and some time later, she told him to stop talking about it. They testified that Glenn then quit socializing at the Mallet home and began stating that Kathy had choked Gail. Glenn denied ever stating that Kathy did not touch Gail and testified that he always knew Kathy choked Gail.

The trial court issued written Reasons for Ruling in which it made the following findings:

> The testimony differed wildly between the parties with the plaintiffs arguing that [Kathy] had choked Gail while [Kathy] steadfastly denied ever touching Gail. Several witnesses were called, either through live testimony or by deposition. In the plaintiffs' case, four (4) witnesses were called: Gail, Glenn Sensat, Craig Mallet, and Dr. Paul [Roger]. Another two (2) witnesses for the plaintiffs – Jerry Mallet and Millie Mallet – were later disqualified by the Court. Gail testified that [Kathy] grabbed her by the neck with both hands and started choking her. Mr. Sensat testified that he saw [Kathy] grab Gail by the neck and that Bob Mallet came up behind [Kathy] and removed her hands from Gail's neck. Craig Mallet testified that he saw both [Kathy] grab Gail and then Bob remove [Kathy]'s hands from Gail's neck.
>
> However, the defendant's witnesses differed significantly from [Gail's] witnesses. The parties' mother/mother-in-law, Mildred Mallet, stated in her deposition that [Kathy] never touched [Gail]; in fact, Mildred stated that she was the one who slapped Gail that day. The parties' brother/brother-in-law, Bob Mallet testified that he did not see [Kathy] touch Gail nor did he pull [Kathy]'s hands off of Gail's neck. Another brother/brother-in-law, Rick Mallet testified that although he was not present at the Mother's Day gathering in 2007, Mr. Sensat (the plaintiffs' witness) was and that in the years since the incident, Mr. Sensat had repeatedly told the story at family gatherings. At no time did [Mr. Sensat] ever say that [Kathy] ever strangled Gail. It was only recently, Rick testified, that Mr. Sensat changed his version of events and stated that [Kathy] had choked Gail.

---

[3] Rick Mallet lives out of state and was not at the Mallet home the day the incident occurred. His testimony addresses events that occurred after the incident when he visited his family.

The Court must weigh the credibility of the witnesses. Bob Mallet, who the plaintiffs contend was the one who physically pulled [Kathy] off of Gail, denied that he pulled [Kathy] off Gail or that [Kathy's] hands were on Gail's neck. The only witnesses at trial that were actually in the room when the incident happened were Gail, [Kathy], and Mildred Mallet. Gail and [Kathy] testified in opposition to each other, and Mildred testified that she was the one who actually slapped Gail. Given all the testimony, the Court ultimately concludes that [Gail] did not meet [her] burden of proving by a preponderance of the evidence that [Kathy] actually grabbed and/or choked Gail during their argument.

Gail urges that the trial court's error of fact with regard to who was in the dining room/kitchen area with her, Kathy, and Mildred when the incident occurred warrants reversal of the trial court's determination that she did not carry her burden of proof. We do not agree.

Due to this error, the trial court did not realize that Craig, Glenn, and Millie were in the dining room/kitchen area when the incident occurred. Nonetheless, Craig and Glenn's credibility was tainted by the fact that they lied during the sequestration hearing, and Millie was disqualified from testifying for the same reason. Furthermore, Glenn's credibility was also challenged by Kathy, Bob, Rick, and Mildred's testimony. Importantly, Dr. Roger testified that there was no way he could distinguish between pain that would have been caused by Gail being choked and pain caused by her face being slapped. Considering all of the evidence presented at trial, we find the trial court's evaluations of credibility and determination that Gail failed to carry her burden of proof is not manifestly erroneous.

## DISPOSITION

The judgment of the trial court is affirmed.  All costs are assessed to Gail Mallet.

**AFFIRMED.**

This opinion is NOT DESIGNATED FOR PUBLICATION.
Uniform Rules—Courts of Appeal, Rule 2–16.3.

**JERRY L. MALLET & GAIL A. MALLET**

**VERSUS**

**KATHY MALLET MONTGOMERY**

**COOKS, J., dissents.**

As the majority sets out, Louisiana Code of Evidence Article 615C provides that a court may impose appropriate sanctions for violations of its exclusion order including contempt, appropriate instructions to the jury, or when such sanctions are insufficient, disqualification of the witness. As Comment (f) to La.Code Evid. Art. 615 explains, disqualification "is the most drastic remedy. It precludes a party from adducing perhaps vital evidence and deprives the jury of the benefit of the witness' testimony." In this case, it is not hyperbole to say the disqualification of Jerry and Millie Mallet as witnesses was a fatal blow to the plaintiffs' case.

Ms. Fields, the deputy clerk, testified she heard Jerry say something to the effect of "he should have objected to that." Ms. Fields did not provide any context to this comment. Jerry testified he simply was admonishing his son for becoming upset while testifying, in response to his son's angry demeanor following his testimony. Jerry acknowledged he should not have discussed any of Craig's testimony with him, but stated their conversation was solely about Craig not "losing his cool."

The law is clear that disqualification of witnesses is an extreme measure which affects the right to a fair and just determination at trial and should only be reserved for only the most egregious violations. I find the record does not in any way establish there was any discussion of the substance of Craig's testimony. Jerry, Craig's father, who is an attorney, simply told him to refrain from "losing his cool."

There was no testimony from anyone, including Ms. Fields, that Millie participated in the conversation between Craig and Jerry. All that was stated was she was in close proximity to Jerry and Craig when they had their exchange. Thus, there was no indication that Millie violated the rule of sequestration in any way, much less in such a fashion that would support her being disqualified as a witness.

I also note the trial judge at numerous times in the record acknowledged he was unsure of how to proceed. He specifically stated "this is all new [territory] for me" and "I don't know how to [rehabilitate the witnesses]."] The trial judge also stated in open court his law clerk had found the statute for sanctions when the rule of sequestration is deemed to be violated. He then noted such a violation can lead to sanctions which include the witnesses being placed into contempt of court or the jury being appropriately instructed (which is inapplicable in the present case as it was a bench trial), and when sanctions are insufficient, disqualification of the witnesses. As it was clear the trial judge was not familiar with the relevant statute, it follows he was unaware that disqualification is a drastic remedy that should only be imposed for an egregious violation of the rule of sequestration. That simply is not the case here.

The Louisiana Supreme Court in *State v. Trahan*, 576 So.2d 1 (La.1990), although recognizing that disqualification it is a drastic remedy only to be imposed as a last resort, found it appropriate in that case when the sequestration violation was committed with the consent, connivance, procurement or knowledge of the party calling the witnesses. There is nothing in the record to indicate anything of the sort occurred in the present case. I find disqualification of the witnesses was unjustified and the trial court abused its discretion in doing so. Moreover, that ruling fundamentally impaired plaintiffs' ability to prove their case. Thus, I respectfully dissent from the majority's opinion in this case.