# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

**20-33**

WILLIAM VANCE

VERSUS

INTERNATIONAL HOUSE OF PANCAKES, LLC

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
TENTH JUDICIAL DISTRICT COURT
PARISH OF NATCHITOCHES, NO. 90,372-B
HONORABLE LALA BRITTAIN SYLVESTER, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

**ULYSSES GENE THIBODEAUX
CHIEF JUDGE**

\*\*\*\*\*\*\*\*\*\*

Court composed of Ulysses Gene Thibodeaux, Chief Judge, Candyce G. Perret, and Jonathan W. Perry, Judges.

**PERRY, Judge, concurs and assigns reasons.**

**AFFIRMED.**

**Thomas Taylor Townsend**
**P. O. Box 784**
**Natchitoches, LA 71458-0784**
**Telephone: (318) 238-3612**
**COUNSEL FOR:**
    **Plaintiff/Appellee – William Vance**

**Michael H. Ishee**
**Joseph C. Giglio, Jr.**
**Liskow & Lewis**
**P. O. Box 52008**
**Lafayette, LA 70503**
**Telephone: (337) 232-7424**
**COUNSEL FOR:**
    **Defendant/Appellant –International House of Pancakes, LLC**

**THIBODEAUX, Chief Judge.**

Plaintiff, William Vance, filed suit against International House of Pancakes, LLC (IHOP), seeking damages for an injury he sustained in a slip and fall on the restaurant's premises. When IHOP failed to timely answer the suit, a preliminary default was entered. After a confirmation hearing, the trial court rendered a final default judgment in Mr. Vance's favor, awarding $685,687.10 in damages. Finding no manifest error or abuse of discretion, we affirm the trial court's judgment.

I.

## ISSUES

We shall consider whether:

1. the trial court manifestly erred in confirming the default judgment when the Record lacked evidence that IHOP is a merchant under La.R.S. 9:2800.6 or owns/manages the premises at issue;

2. the trial court manifestly erred in confirming the default judgment when the Record lacked evidence that Appellee's wrist injuries were caused by the slip and fall;

3. the trial court abused its discretion in awarding $675,000 in general damages based on the facts and circumstances in the Record.

II.

## FACTS AND PROCEDURAL HISTORY

This action arises out of a slip and fall that occurred on November 1, 2017, at the IHOP in Natchitoches, Louisiana. As a result, Mr. Vance suffered serious injuries, which ultimately required surgery. On June 20, 2018, Mr. Vance

filed suit against IHOP, and service was made on IHOP, through its duly appointed agent for service of process, Corporation Service Company, located at 501 Louisiana Avenue, Baton Rouge, Louisiana. Due to administrative oversight, IHOP failed to timely answer the suit. A preliminary default was then entered, at Mr. Vance's request, on July 26, 2018. The confirmation hearing was held on August 22, 2019, over a year later.

During the hearing, Mr. Vance testified that he slipped and fell in the men's bathroom at the IHOP in Natchitoches, Louisiana, on a "wet, slippery surface." He recalled that when he fell, he hit his right side, injuring his right wrist, elbow, and shoulder, and that when he was finally able to get up, his "clothes were wet" from water that appeared to be "all over the floor[.]" According to his testimony, Mr. Vance immediately reported the incident to an IHOP employee, and he explained he knew the person was an employee by virtue of what the man was wearing and his representation to him that he was, in fact, an IHOP employee. The employee, Mr. Vance testified, admitted that "they've had a problem with [the bathroom floor] and they couldn't do nothing about it." He further testified that there was nothing he did to contribute to the fall.

Mr. Vance recalled for the court that he went to Dr. W. Jack Corley, his general practitioner, with complaints of pain in his right wrist, elbow, and shoulder, which he characterized as a six on a scale of one to ten, if he held his arm steady. He explained that, if he tried to move his arm, he couldn't and that his pain level reached a ten while awaiting surgery.

In his sworn statement, Dr. Corley testified that Mr. Vance was a regular patient and that, on November 3, 2017, he saw him for injuries to his right shoulder and thigh resulting from the slip and fall. Based upon his records, Dr.

2

Corley opined that, at that time, Mr. Vance, more probable than not, suffered an injury to his right shoulder when he fell at IHOP. According to Dr. Corley's statement, Mr. Vance's past medical history did not indicate a prior injury to that shoulder.

When he returned to Dr. Corley's office on November 17, 2017, Mr. Vance's record showed that he was still complaining of pain in his right shoulder. Although an MRI was needed to show ligaments and injuries thereto, Mr. Vance, Dr. Corley explained, could not have an MRI because he has a brain stimulator. The x-rays taken of his shoulder, wrist, and hand "show[ed] nothing." Dr. Corley then injected Mr. Vance's shoulder and gave him anti-inflammatories and pain medication.

Dr. Corley noted Mr. Vance was still in pain and had "limited motion" of his right shoulder when he returned to see Dr. Corley on December 1, 2017. A CAT scan was ordered. It showed no fractures, but without the use of contrast Dr. Corley could not pinpoint exactly the nature and extent of the injury so to render a final diagnosis. Dr. Corley then referred Mr. Vance to Dr. Steven Kautz, an orthopedic surgeon.

In his sworn statement, Dr. Kautz recalled that he saw Mr. Vance on December 2, 2017, and ultimately diagnosed him with a rotator cuff tear. On April 25, 2018, Dr. Kautz surgically repaired Mr. Vance's cuff and proximal biceps tendon and also performed a tenodesis for labral pathology. While in surgery, Dr. Kautz confirmed that Mr. Vance's right rotator cuff and labrum were torn, which he opined made the surgery warranted and medically necessary. He further opined that, more probable than not, the fall caused the rotator cuff and labrum tears as well as the need for surgery and his treatment of Mr. Vance. According to Dr. Kautz, "rotator

3

cuff surgery, in general, is both painful before, but in particular it is probably one of the more uncomfortable surgeries to go through." Dr. Kautz also testified that Mr. Vance's medical visits and the expenses incurred were related to his injury suffered in the fall and were medically necessary. Based upon his examination and preliminary diagnosis coupled with his communication with Dr. Kautz, Dr. Corley similarly opined that the rotator cuff repair surgery was both medically necessary and caused by Mr. Vance's fall at IHOP on November 1, 2017.

Dr. Kautz then referred Mr. Vance for rehabilitation with Prism II, LLC, and continued to see him until September 18, 2018. Though having followed all rehabilitative instructions, Mr. Vance testified that only some of his pain was eliminated after the surgery and that he still suffers from pain in his wrist and shoulder.

Describing his current pain for the court, Mr. Vance stated that he still cannot lift up his arm and has difficulty opening doors. Reaching up for a cabinet or above his head, he explained, is still a very difficult task. He further testified that because he is right-handed, his injuries limit his ability to do daily life activities, like getting dressed, brushing his teeth, and doing household chores such as cleaning, vacuuming, and washing dishes. Mentally, this is all "[v]ery aggravating" and a daily struggle, but he stated it was something he just "had to get used to." As for his wrist, Mr. Vance testified that Dr. Kautz conveyed to him that there is nothing that can be done and there is no surgery to fix it because when he "fell it started some arthritis or something in that wrist[.]" According to his testimony, the things he enjoyed doing all his life, roping and swimming in the lake, he can no longer do.

At the close of the hearing, the trial court questioned Mr. Vance as to whether or not he had scarring from the surgery to which he responded in the affirmative. The court also requested that he supplement the record with cases "for the wrist and the elbow" as the cases previously submitted only involved shoulder injuries.

On September 9, 2019, the trial court issued its ruling, finding in Mr. Vance's favor and awarding him $10,687.10 in special damages for past due medical expenses, and $675,000.00 in general damages, as follows:

| | |
|---|---|
| Physical Pain & Suffering: | $350,000.00 |
| Mental Pain & Anguish: | $150,000.00 |
| Loss of Enjoyment of Life: | $100,000.00 |
| Permanent Disfigurement & Scarring: | $ 75,000.00. |

IHOP now appeals the final default judgment as to both the confirmation of the preliminary default and the general damages awarded.

III.

**STANDARD OF REVIEW**

An appellate court's review of a default judgment is "restricted to determining the sufficiency of the evidence offered in support of judgment." *Bordelon v. Sayer*, 01-717, p. 3 (La.App. 3 Cir. 3/13/02), 811 So.2d 1232, 1235, *writ denied*, 02-1009 (La. 6/21/02), 819 So.2d 340. From the record, the appellate court determines "whether the evidence upon which the judgment is based was sufficient and competent." *Id*. Nevertheless, as a factual determination, the trial court's findings on the sufficiency of the evidence are still subject to manifest error review. *Id*.

5

"As a determination of fact, a judge's . . . assessment of quantum, or the appropriate amount of damages, is one entitled to great deference on review." *Menard v. Lafayette Ins. Co.*, 09-1869, p. 14 (La. 3/16/10), 31 So.3d 996, 1007; *see also* La.Civ.Code art. 2324.1 ("much discretion must be left to the judge" in damage assessments). "The reason for this well-settled principle of review is based not only upon the trial court's better capacity to evaluate live witnesses (as compared with the appellate court's access only to a cold record), but also upon the proper allocation of trial and appellate functions between the respective courts." *Perkins v. Entergy Corp.*, 00-1372, p. 10 (La. 3/23/01), 782 So.2d 606, 613 (quoting *Canter v. Koehring Co.*, 283 So.2d 716, 724 (La.1973), superseded by statute as stated in *Walls v. Am. Optical Corp.*, 98-455 (La. 9/8/99), 740 So.2d 1262). "Because the discretion vested in the trier of fact is so great, and even vast, an appellate court should rarely disturb an award on review" and only on an abuse of discretion. *Guillory v. Lee*, 09-75, p. 14 (La. 6/26/09), 16 So.3d 1104, 1117.

IV.

**LAW AND DISCUSSION**

Pursuant to La.Code Civ.P. art. 1701, a preliminary default may be entered against a defendant who fails to answer within the time prescribed by law. The procedure for confirming a preliminary default is set forth in La.Code Civ.P. art. 1702, which provides, in pertinent part:

> A.  A preliminary default must be confirmed by proof of the demand that is sufficient to establish a prima facie case and that is admitted on the record prior to the entry of a final default judgment.
>
> . . . .

6

B. (2) When a demand is based upon a delictual obligation, the testimony of the plaintiff with corroborating evidence, which may be by affidavits and exhibits annexed thereto which contain facts sufficient to establish a prima facie case, shall be admissible, self-authenticating, and sufficient proof of such demand. The court may, under the circumstances of the case, require additional evidence in the form of oral testimony before entering a final default judgment.

. . . .

D. When the demand is based upon a claim for a personal injury, a sworn narrative report of the treating physician or dentist may be offered in lieu of his testimony.

"A prima facie case is established when the plaintiff proves the essential allegations of the petition, with competent evidence, to the same extent as if the allegations had been denied." *Power Mktg. Direct, Inc. v. Foster*, 05-2023, pp. 10-11 (La. 9/6/09), 938 So.2d 662, 670. Simply put, the evidence submitted by a plaintiff must "convince[] the court that it is probable that he would prevail at trial on the merits." *Id.* "A final default judgment shall not be different in kind from that demanded in the petition. The amount of damages awarded shall be the amount proven to be properly due as a remedy." La.Code Civ.P. art. 1703.

In his petition, Mr. Vance sought judgment in his favor against IHOP for "such amounts as will reasonably and adequately compensate him for all injuries and damages he has sustained and will sustain as a result of" IHOP's failure to exercise reasonable care in maintaining the restaurant's bathroom in a safe condition and keeping its premises free of hazardous conditions. As the petition sets forth an action in merchant premises liability, this matter is governed by La.R.S. 9:2800.6, which provides:

7

A.  A merchant owes a duty to persons who use his premises to exercise reasonable care to keep his aisles, passageways, and floors in a reasonably safe condition. This duty includes a reasonable effort to keep the premises free of any hazardous conditions which reasonably might give rise to damage.

B.  In a negligence claim brought against a merchant by a person lawfully on the merchant's premises for damages as a result of an injury, death, or loss sustained because of a fall due to a condition existing in or on a merchant's premises, the claimant shall have the burden of proving, in addition to all other elements of his cause of action, all of the following:

(1)  The condition presented an unreasonable risk of harm to the claimant and that risk of harm was reasonably foreseeable.

(2) The merchant either created or had actual or constructive notice of the condition which caused the damage, prior to the occurrence.

(3) The merchant failed to exercise reasonable care.  In determining reasonable care, the absence of a written or verbal uniform cleanup or safety procedure is insufficient, alone, to prove failure to exercise reasonable care.

C.  Definitions:

(1) "Constructive notice" means the claimant has proven that the condition existed for such a period of time that it would have been discovered if the merchant had exercised reasonable care.  The presence of an employee of the merchant in the vicinity in which the condition exists does not, alone, constitute constructive notice, unless it is shown that the employee knew, or in the exercise of reasonable care should have known, of the condition.

8

(2) "Merchant" means one whose business is to sell goods, foods, wares, or merchandise at a fixed place of business. For purposes of this Section, a merchant includes an innkeeper with respect to those areas or aspects of the premises which are similar to those of a merchant, including but not limited to shops, restaurants, and lobby areas of or within the hotel, motel, or inn.

D. Nothing herein shall affect any liability which a merchant may have under Civil Code Arts. 660, 667, 669, 2317, 2322, or 2695.

Herein, IHOP contends that Mr. Vance failed to establish a prima facie case insofar as he did not prove: (1) IHOP was a merchant under La.R.S. 9:2800.6 or that IHOP owned/managed the premises at issue, and (2) his wrist injuries were caused by the slip and fall.

Although IHOP argues that the record is devoid of evidence that IHOP was a merchant, our plain reading of the provisions of La.R.S. 9:2800.6(C)(2) reveals the flaw in this argument. Under its provisions as recited above, a restaurant, like IHOP, is explicitly included in the definition of a merchant, and Mr. Vance has consistently referred to IHOP as a restaurant throughout this proceeding. Specifically, he testified that he was a "patron of the IHOP restaurant" and stated in his various filings in this action that IHOP is a restaurant and that La.R.S. 9:2800.6 applies. Moreover, according to his testimony, Mr. Vance spoke with an IHOP employee, identifiable by his clothing and his own representations, on the premises immediately following the accident, which employee acknowledged a problem with the restaurant's bathroom floor about which the restaurant could do nothing.[1]

---

[1]Because this matter sounds in merchant liability under La.R.S. 9:2800.6 and the evidence sufficiently and competently establishes IHOP's status as a merchant, we need not address IHOP's second contention that Mr. Vance failed to establish IHOP owned/managed the property as actions

Accordingly, we find the contention that IHOP is not a merchant under La.R.S. 9:2800.6 as established by the evidence of record lacks merit.

As to the injuries to Mr. Vance's wrist and elbow, we find the record does contain sufficient and competent evidence regarding these injuries. He specifically testified that he injured his wrist, elbow, and shoulder in the fall and that he sought medical attention for pain in his wrist, elbow, and shoulder. He further testified to his inability to lift or raise his arm, and Dr. Corley x-rayed his shoulder, arm, and hand, which anatomically includes his elbow and wrist, in an attempt to pinpoint the nature and extent of his injuries. Because his complaints were corroborated by Dr. Corley's and Dr. Kautz's sworn statements in which they both opined that Mr. Vance's injuries were caused by the fall, the record would reasonably support a finding that he made a prima facie showing as to these injuries.

Regardless, though, IHOP's contention "fail[s] to take into account the well-settled rule that the district court's oral or written reasons for judgment form no part of the judgment, and that appellate courts review judgments, not reasons for judgments." *Bellard v. Am. Cent. Ins. Co.*, 07-1335, p. 25 (La. 4/18/08), 980 So.2d 654, 671. And as the supreme court explained in *Wooley v. Lucksinger*, 09-571, p. 77 (La. 4/1/11), 61 So.3d 507, 572, "[j]udgments are often upheld on appeal for reasons different than those assigned by the district judges." It logically follows, therefore, that whether or not Mr. Vance carried his burden regarding his wrist and

---

against owners and custodians fall under the general liability for things and buildings articles in our Civil Code—La.Civ.Code arts. 2317, 2317.1, and 2322. *Cf. Owens v. McIlhenny Co.*, 18-754 (La.App. 3 Cir. 3/27/19), 269 So.3d 839 (distinguishing actions that arise under La.R.S. 9:2800.6 from actions arising under La.Civ.Code art. 2317.1). The issue of ownership, therefore, is not relevant to the merits of Mr. Vance's merchant liability action under La.R.S. 9:2800.6, and so further discussion of this issue is pretermitted.

10

elbow injuries is immaterial as he more than sufficiently established a prima facie case against IHOP for damages arising from his shoulder injuries.

Because the evidence of record does reasonably show that Mr. Vance slipped and fell on the restaurant's slippery, wet bathroom floor, of which IHOP was aware, and that his injuries, more probable than not, were caused by his fall, we find no manifest error in the trial court's conclusion that Mr. Vance's evidence was sufficient and competent to establish a prima facie case as to IHOP's status as a merchant under La.R.S. 9:2800.6 and its liability thereunder for his injuries due to its failure to maintain its floors in a reasonably safe condition. Accordingly, we cannot find the trial court manifestly erred in confirming the preliminary default and rendering a final default judgment against IHOP based on the record before this court.

In its final argument, IHOP challenges the trial court's general damage award. As summarized above, the record evidence does reasonably and sufficiently show that Mr. Vance suffered and complained of an injury to his shoulder as well as to his wrist and elbow, which directly affected his ability to use his right arm on a daily basis in performing common place activities as well as those he always enjoyed doing, like swimming and roping. He rated his pain from a six to a ten before the surgery and testified as to his continued pain after the surgery, which Dr. Kautz characterized as "one of the most uncomfortable surgeries to go through" both before and after. Dr. Corley testified that Mr. Vance had no prior injury or problems with his right shoulder. His testimony further revealed the daily mental aggravation he endures in not being able to use his right arm, particularly because he is right-handed, and the scarring he has due to the extensive surgery he underwent to his right arm and shoulder. Based on this evidence as well as her personal observance of this

11

particular plaintiff, the trial court herein awarded $100,000.00 for loss of enjoyment of life, $350,000.00 for pain and suffering, $150,000.00 for mental pain and anguish, and $75,000.00 for permanent disfigurement and scarring.

When reviewing general damages, like the damages in this case, we are tasked with determining whether the award was an abuse of discretion. The supreme court in *Youn v. Maritime Overseas Corporation*, 623 So.2d 1257, 1260-61 (La.1993) (citations omitted), discussed the two-part inquiry a reviewing court must engage in when making this determination:

> The initial inquiry is whether the award for the particular injuries and their effects under the particular circumstances on the particular injured person is a clear abuse of the "much discretion" of the trier of fact. Only after such a determination of an abuse of discretion is a resort to prior awards appropriate and then for the purpose of determining the highest or lowest point which is reasonably within that discretion.

> The standard for appellate review of general damage awards is difficult to express and is necessarily non-specific, and the requirement of an articulated basis for disturbing such awards gives little guidance as to what articulation suffices to justify modification of a generous or stingy award.... Reasonable persons frequently disagree about the measure of general damages in a particular case. It is only when the award is, in either direction, beyond that which a reasonable trier of fact could assess for the effects of the particular injury to the particular plaintiff under the particular circumstances that the appellate court should increase or reduce the award.

In the present case, IHOP argues that the general damage award is clearly excessive. To support its argument, IHOP points out that within six months of his accident, Mr. Vance received the requisite surgery to repair his shoulder and that within a year of the accident, he was fully recovered from his surgery. IHOP further contends that "[b]ased on the nature of the surgery and expeditious recovery

of [Plaintiff], the trial court abused its discretion in an award of $675,000.00 in general damages." IHOP avers this is especially true given that the trial court awarded $150,000.00 for mental impact, which Mr. Vance merely described as "[v]ery aggravating," and $75,000.00 for some scarring at the surgical site. At the conclusion of its argument, IHOP recites a litany of cases awarding significantly smaller amounts for shoulder, wrist, and elbow injuries.

Before examining those cases, however, this court must first determine "whether the award for the particular injuries and their effects under the particular circumstances on the particular injured person is a clear abuse of the 'much discretion' of the trier of fact." *Youn*, 623 So.2d at 1260. Although IHOP argues that a lesser award would be more appropriate, what IHOP does not address is Mr. Vance's testimony that, although he has recovered from his surgery, he is still greatly limited by his injury, to the extent that he, as a right-handed sixty-two-year-old man,[2] can no longer perform simple, daily tasks, which include dressing and grooming himself, with his right arm. As his testimony demonstrated, Mr. Vance's mobility in his right arm and shoulder is also significantly limited, and he is unable to do things he has enjoyed for most of his life. IHOP seemingly overlooks the pain that Mr. Vance testified was not and cannot be alleviated by surgery. It also fails to consider the effect that Mr. Vance's foreseeable ongoing pain, limitations, inabilities, and physical scarring have on his mental and emotional wellbeing as well as his overall enjoyment of life.

Considering these and other factors under the standards discussed above, we cannot say that the trial court abused its discretion in fixing the awards of

---

[2]According to the medical summary, Mr. Vance was born on March 6, 1958.

general damages. The awards are reasonably related to the elements of the proven damages and are not obviously the result of passion or prejudice. While we review a cold record, the trial court evaluated Mr. Vance's physical condition and observed his mental and emotional state from the bench during his live testimony. And although other factfinders could have found, as IHOP argues, that a lower award would be more appropriate, we cannot conclude from the entirety of the evidence in this record that a rational trier of fact could not have fixed the awards of general damages at the level set by the trial court or that the awards are so gross as to be contrary to right reason. Accordingly, we find no abuse of discretion in the trial court's general damage awards.

Having found no manifest error or abuse of discretion, we affirm the judgment of the trial court in its entirety.

V.

## CONCLUSION

For the foregoing reasons, the judgment of the trial court is affirmed.

Costs of this appeal are assessed to Defendant/Appellant, International House of Pancakes, LLC.

**AFFIRMED.**

STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

20-033

WILLIAM VANCE

VERSUS

INTERNATIONAL HOUSE OF PANCAKES, LLC

**PERRY, Judge, concurring.**

I agree with the majority there is no clear error in the trial court's confirmation of the preliminary default against the defendant. Nevertheless, I write separately to declare my belief the trial court was quite generous in fixing the awards of general damages. Considering the evidence of record, I feel constrained to agree the trial court did not clearly abuse its "much discretion" when setting general damages herein. *Youn v. Maritime Overseas Corporation*, 623 So.2d 1257, 1260 (La.1993). However, were this not an appeal from a default judgment where evidence was offered solely by the plaintiff—without cross-examination or opposing medical evidence—I cannot say with certainty I would not find a reduction of general damages is required under the principles set forth in *Coco v. Winston Indus. Inc.*, 341 So.2d 332 (La.1976).